STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOSEPH A. DIRIENZO, DEFENDANT-APPELLANT.

Argued December 5, 1968—Decided March 4, 1969.

**366**

*Cynthia M. Jacob,* Assistant Deputy Public Defender, argued the cause for defendant-appellant (*Mr. Peter Murray,* Public Defender, attorney; *Cynthia M. Jacob* on the brief).

*Mr. Donald S. Coburn,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Joseph P. Lordi,* Prosecutor of Essex County, attorney; *Mr. Donald S. Coburn* on the brief).

The opinion of the court was delivered by

PROCTOR, J. The defendant Joseph DiRienzo was convicted by a jury in the Essex County Court under two indictments consolidated for trial charging him with illegally receiving stolen goods. *N. J. S.* 2A:139–1. He was sentenced to two terms of from three to five years, to be served consecutively. He appealed, and before argument in the Appellate Division we certified the matter on our own motion.

At the trial, the evidence introduced by the State showed the following: On Tuesday, July 25, 1967, two apartments in the same building in Chatham, New Jersey were broken into, and among the items taken were a gold wrist watch belonging to Mrs. Charles Tiley and a rare coin collection belonging to Mr. Herbert Reese. The following Sunday

morning, July 30, the police arrived at the defendant's apartment in East Orange with a search warrant. The defendant and his wife were present. The stolen watch was being worn by defendant's wife, and some of the stolen coins, wrapped in tissue paper, were found inside a dresser. The defendant was arrested and taken to police headquarters. Later that morning a detective returned to defendant's apartment and removed a leather travel kit from the back seat of defendant's automobile which was parked in the rear of the building. The kit had been used by Mr. Reese to hold his coin collection.

On the following day, armed with a second search warrant, the police found in the defendant's apartment a bag with the inscription, Bank of Lebanon, Pennsylvania, a Seagram's Crown Royal bag, and a brown envelope with Mr. Tiley's initials on it, all of which belonged to Mr. and Mrs. Tiley. The brown envelope was found on the dresser; the other items were in a cardboard box among some clothing.

On the defendant's behalf, Nicholas Melillo testified that the defendant allowed him to stay at the apartment on the night of Friday, July 28. Melillo said that the next day in Newark he bought a bag with the stolen items in it from a drug addict for $35.00. He testified that he returned to defendant's apartment with the bag, was let in by the superintendent, and placed the watch on the dresser and the rest of the things in a box. The superintendent testified that he had let Melillo into the apartment on that Saturday on the defendant's prior instructions. He did not notice whether Melillo was carrying anything when he entered the apartment.

Mrs. DiRienzo, defendant's wife, testified that on Friday, July 28, she and her husband went for a long automobile ride and stayed in a motel overnight in the Delaware Water Gap area. She said they returned to the apartment on Saturday about 10:00 P. M.; that Melillo came to the door of the apartment after she had gone to bed, and told her husband that he had left some things there and he would pick them

up the next day. She explained that she was wearing the watch the next morning because she wanted to convince her husband to buy it from Melillo as a present for her. Yolanda Cuomo testified that she witnessed the police entering the apartment on four or five occasions after July 30, and that they left the apartment "in a wreck." The defendant did not take the stand.

In his charge, the trial judge instructed the jury that the State bore the burden of proving beyond a reasonable doubt that the goods were received by defendant, that they had been stolen, and that the defendant at the time he received them knew the goods had been stolen. He then read, nearly verbatim, the Receiving Stolen Property statute which is reproduced in the margin.[1] In explaining the effect of the statute, the judge said: "The statute in the respect that I have just alluded to merely authorizes you to convict under

---

[1] *N. J. S. 2A:139-1.*

Any person who receives or buys any goods or chattels, or choses in action, or other thing of value stolen from any other person or taken from him by robbery or otherwise unlawfully or fraudulently obtained, or converted contrary to law, whether the stealing or robbery was committed either in or out of this state, and whether the property was received or bought from the thief or robber, or from another person, or who receives, harbors or conceals any thief or robber knowing him to be so, is guilty of a high misdemeanor.

Possession of such property within 1 year from the date of such stealing, robbery or unlawful or fraudulent obtaining, shall be deemed sufficient evidence to authorize conviction, unless the accused show to the satisfaction of the jury either:

a. That the property, considering the relations of the parties thereto and the circumstances thereof, was a gift to him and not received by him from a minor under the age of 16 years; or

b. That the amount paid by him for the property represented its fair and reasonable value and that it was not received by him from a minor under the age of 16 years; or

c. That when he bought the property he knew or made inquiries sufficient to satisfy a reasonable man, that the seller was in a regular and established business for dealing in property of the description of the property purchased; or

d. That when he received or bought the property, he simultaneously with or before the receipt or sale, reported the transaction to the police authorities of the municipality in which he resided at the

the circumstances recited but, of course, it does not require you to do so. Your ultimate task is to determine on the basis of all the evidence in this case, whether or not this defendant did, in fact, receive stolen property from another, and did, in fact, know at that time that this property was stolen."[2] There were no objections made to the charge.

## I

Defendant contends that the State failed to prove possession of the goods, an essential element of the crime, properly defined by the trial judge in his charge as "intentional control and dominion" over the goods. See *State v. Labato*, 7 *N. J.* 137, 148–149 (1951). This is to be distinguished from the State's burden of proving guilty knowledge, *i. e.*, that the defendant possessed the goods knowing them to have been

---

time of such receiving or buying and that the property was not received by him from a minor under the age of 16 years; or

e. That before he received or bought the property from a minor under the age of 16 years, he first communicated with the police authorities of the municipality in which he resided and obtained their approval for the purchase, barter, exchange or receipt of possession thereof.

[2] A literal reading of *N. J. S.* 2A:139–1 would seem to permit conviction without regard to proof of guilty knowledge: "possession of such property * * * shall be deemed sufficient evidence to authorize conviction * * *". For example, the statute on its face would authorize conviction of a police officer having possession of stolen goods in the course of his duties. This would be an absurdity. The trial judge, however, rightly read into the statute a requirement of proof of guilty knowledge without which the statute would be vulnerable to constitutional attack. Receiving stolen goods is a crime which traditionally requires proof of the defendant's state of mind as an element of the State's case. This was the effect of the holding in *State v. Laster*, 69 *N. J. Super.* 504 (*App. Div.* 1961); see *Morissette v. United States*, 342 *U. S.* 246, 72 *S. Ct.* 240, 96 *L. Ed.* 288 (1951); *State v. Hudson County News Co.*, 35 *N. J.* 284 (1961). The state of mind in a receiving stolen goods case includes both intentional possession, discussed in *I., infra,* and guilty knowledge, *i. e.*, knowledge that the goods were stolen and an intent to deprive the rightful owner of their possession. The propriety of the jury's inference of guilty knowledge from possession will be discussed in *II., infra.*

stolen. "Intentional" control and dominion means merely that the defendant was aware of his possession: "One who has the physical control of a chattel with the intent to exercise such control either on his own behalf or on behalf of another is in possession of the chattel." *Restatement Second, Torts* § 216, *comment b*.

▮ In the present case, when the police arrived at the defendant's apartment, Mrs. DiRienzo was wearing the stolen wrist watch, and some of the stolen coins were in defendant's dresser. This would certainly support a jury finding that the defendant had intentional control and dominion over the goods. See *State v. Bozeyowski*, 77 *N. J. Super*. 49, 58 (*App. Div.* 1962), *certiorari* denied, 374 *U. S.* 851, 83 *S. Ct.* 1916, 10 *L. Ed. 2d* 1071 (1963).

## II

Defendant has launched a broad-based attack on the constitutionality of *N. J. S.* 2A:139-1. He contends that in authorizing a jury to infer guilty knowledge from the mere fact of possession of stolen goods, the statute contravenes due process of law and violates the fifth amendment's protection against compulsory self-incrimination.[3] The constitutional argument breaks down into four related parts.

▮ A. The first argument is based on the United States Supreme Court case of *Tot v. United States*, 319 *U. S.* 463, 63 *S. Ct.* 1241, 87 *L. Ed.* 1519 (1943). In *Tot*, the Court held unconstitutional a statutory presumption that a gun in the possession of a defendant who had a prior record of a crime of violence, had been illegally received by him in interstate commerce, and that such receipt occurred after July 30, 1938, the effective date of the statute. In holding that there was no rational connection between possession of a gun by a defendant with a prior criminal record, and the

---

[3] These rights are made applicable to the states by the fourteenth amendment. *Malloy v. Hogan*, 378 *U. S.* 1, 84 *S. Ct.* 1489, 12 *L. Ed. 2d* 653 (1963).

presumption that the gun had been received in interstate commerce after July 30, 1938, the Court said:

"Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts. * * * It is not too much to say that the presumptions created by the law are violent, and inconsistent with any argument drawn from experience." 319 *U. S.* at 467–468, 63 *S. Ct.* at 1245, 87 *L. Ed.* at 1524–1525.

The Court recognized that there was no reasonable ground for the presumption that the gun was received in interstate rather than intrastate commerce, or that its acquisition occurred after the effective date of the statute. 319 *U. S.* at 468, 63 *S. Ct.* 1241, 87 *L. Ed.* at 1525.

The Court in *Tot* cited with approval a number of cases which sustained statutory presumptions which accorded with common experience, *e. g., Hawes v. Georgia,* 258 *U. S.* 1, 42 *S. Ct.* 204, 66 *L. Ed.* 431 (1921) (fact of still on defendant's property provided *prima facie* evidence of defendant's knowledge of its existence) ; *Yee Hem v. United States,* 268 *U. S.* 178, 45 *S. Ct.* 470, 69 *L. Ed.* 904 (1925) (possession of opium gave rise to presumption that defendant knew it had been illegally imported)

The "rational connection" requirement set forth in *Tot* is illuminated by the two Supreme Court cases of *United States v. Gainey,* 380 *U. S.* 63, 85 *S. Ct.* 754, 13 *L. Ed. 2d* 658 (1965) and *United States v. Romano,* 382 *U. S.* 136, 86 *S. Ct.* 279, 15 *L. Ed. 2d* (1965), both involving prosecutions of defendants arrested at the sites of illegal stills under the federal statute requiring the registration of alcohol-distilling apparatus. In *Gainey,* the Court upheld the constitutionality of 26 *U. S. C.* § 5601(*b*)2 which says that in a prosecution

under § 5601(a)4 for carrying on the business of an illegal still "whenever * * * the defendant is shown to have been at the site or place where, and at the time when, the business of a distiller or a rectifier was so engaged in or carried on, such presence of .the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury * * *."

In holding that there was a rational connection in common experience between the fact proved, presence at the still, and the ultimate fact presumed, participating in the business, the Court noted:

"The process of making the determination of rationality is, by its nature, highly empirical, and in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it."

In *Romano, supra,* the defendant who was apprehended at the site of an illegal still was prosecuted under § 5601(a) 1 for "possession, custody, or * * * control" of an illegal still. *U. S. C.* § 5601(b)1 permits a jury to convict for possession, custody or control on the basis of defendant's presence at the site alone. The Court held that any connection between presence and possession was too tenuous to permit a reasonable inference of guilt, and that the inference of one from the other is unconstitutionally arbitrary. 382 *U. S.* at 141, 86 *S. Ct.* at 282, 15 *L. Ed.* 2d at 214. In distinguishing *Gainey* the Court said:

"Presence tells us only that the defendant was there and very likely played a part in the illicit scheme. But presence tells us nothing about what the defendant's specific function was and carries no legitimate, rational or reasonable inference that he was engaged in one of the specialized functions connected with possession, rather ·than in one of the supply, delivery, or operational activities having nothing to do with possession." *Id.*

*Cf. State v. Blanca,* 100 *N. J. Super.* 241, 249 (*App. Div.* 1968); *State v. Lewis,* 93 *N. J. Super.* 212 (1966), *certiorari* denied, 386 *U. S.* 986, 87 *S. Ct.* 1297, 18 *L. Ed.* 2d 238 (1967).

Thus in *Gainey,* the inference of participating in the operation of an illegal still from defendant's presence at the site was held to accord with common experience. Persons who are present at such a site are more than likely engaged in some activity related to the operation of the still. A legislature could constitutionally recognize that the fact of defendant's presence ordinarily has probative worth in the determination of guilt. In *Romano,* an inference of specific acts of possession and control from mere presence was held to lack an adequate foundation in common experience. It was at least equally likely that the defendant was engaged in some other aspect of the still's operation.

Similarly, in the recent case of *United States v. Adams,* 293 *F. Supp.* 776 (*S. D. N. Y.* 1968), distinguishing *Yee Hem, supra,* an inference that a defendant possessing marijuana knew it to be illegally imported was held to be arbitrary, on the ground that it was common experience that much (or most) marijuana was homegrown, and thus it was at least equally likely that the defendant would have no knowledge of illegal importation.

With regard to the present case, we cannot say that it is contrary to common experience to recognize, as the Legislature recognized, that the unexplained possession of stolen goods within a limited time from their theft more than likely carries with it the knowledge that the goods were stolen. Stolen goods from two thefts were found in DiRienzo's apartment five days after they had been stolen. In light of all the facts and circumstances in this case, the jury could properly accord the defendant's recent possession its natural probative worth in their determination of guilty knowledge. Such an inference is not strained or arbitrary and meets the rational connection test as set forth in *Tot.*

As for the one year limitation set forth in the statute (see footnote 1) it is our opinion that that provision operates for the benefit of the accused, precluding any inference to be drawn from the naked possession of stolen goods after one year from the date of their theft. Of course, there may be other evidence which, along with possession, would warrant an inference of guilty knowledge in cases where possession occurs after one year from the theft.

It has long been held in the absence of a statutory provision such as ours that possession of recently stolen property permits an inference that the possessor knew that the property had been stolen, unless the possession is satisfactorily accounted for. *Aron v. United States,* 382 *F.* 2d 965 (8th *Cir.* 1967) ; *United States v. Lefkowitz,* 284 *F.* 2d 310 (2d *Cir.* 1960) ; *Pearson v. United States,* 192 *F.* 2d 681 (6th *Cir.* 1951) ; see *Wilson v. United States,* 162 *U. S.* 613, 16 *S. Ct.* 895, 40 *L. Ed.* 1090 (1896) ; *State v. Dancyger,* 29 *N. J.* 76, certiorari denied, 360 *U. S.* 903, 79 *S. Ct.* 1286, 3 *L. Ed.* 2d 1255 (1959) ; *Commonwealth v. Wilbur,* 353 *Mass.* 376, 231 *N. E.* 2d 919 (1967), certiorari denied, 390 *U. S.* 1010, 88 *S. Ct.* 1260, 20 *L. Ed.* 2d 161 (1968) ; *Anglin v. State,* 244 *Md.* 652, 224 *A.* 2d 668 (1966). Use of the inference is a factually sound and necessary evidentiary rule. In order to prove a state of mind, the defendant's thought processes cannot be laid bare; inevitably the jury will have to glean conclusions from the surrounding circumstances. Without the inference it would be difficult, if not impossible, to convict knowing possessors or fences of stolen goods absent an admission of guilty knowledge, an event not likely to occur.

To put the entire controversy surrounding the inference in its proper context, it must be remembered that all of evidence is a process of inferring one thing from another, circumscribed only by the outer limits of relevance or prejudiciality. "Evidence is always a relative term; it signifies a relation between two facts, the *'factum probandum,'* or proposition to be established, and the *'factum probans'*, or material evi-

dencing the proposition; all evidence must involve an inference from some fact to the proposition to be proved. *Wigmore on Evidence* (3d ed), sections 2, 12; 25, 26, 475." *State v. Mucci,* 25 *N. J.* 423, 431 (1957).

*N. J. S.* 2A:139-1 has been upheld against constitutional attack by the courts of this state on several occasions. *State v. Todaro,* 131 *N. J. L.* 430 (*E. & A.* 1944), appeal dismissed, 323 *U. S.* 667, 65 *S. Ct.* 73, 89 *L. Ed.* 542 (1944); *State v. Lisena,* 131 *N. J. L.* 39 (*E. & A.* 1943); *State v. Giordano,* 121 *N. J. L.* 469 (*Sup. Ct.* 1939); *State v. Laster,* 69 *N. J. Super.* 504 (*App. Div.* 1961). The defendant's appeal to the United States Supreme Court in *Todaro, supra,* was dismissed for lack of a substantial federal question, the only cases referred to by the Court being *Tot* and *Wilson, supra.*

A recent decision of the Supreme Court of Nevada, however, applying the rational connection test set forth in *Tot,* has held a statute similar to ours unconstitutionally arbitrary. *Carter v. State,* 415 *P. 2d* 325 (*Nev.* 1966).[4] In *Carter,* the court held that "[t]hough possession is relevant and admissible evidence, it does not necessarily point to guilt. * * * Clearly, the statutory presumption of guilt from possession is arbitrary and cannot satisfy due process requirements, nor may it be said, in these circumstances, that the presumption meets the burden cast upon the state to prove the defendant's guilt beyond a reasonable doubt." *Id.* at 327; *cf. Payne v. State,* 435 *P. 2d* 424 (*Okl. Cr.* 1968).

We cannot agree with the court in *Carter,* interpreting *Tot,* that for an inference not to be arbitrary it must *necessarily* point to guilt. Indeed, as we quoted above, the United

---

[4] *Carter* overruled the decision in *Cox v. State,* 398 *P. 2d* 538 (*Sup. Ct. Nev.* 1965), which had upheld the Nevada statute one year earlier. *Cox* had relied upon several New Jersey cases. However, the Nevada court did not refer in either of its opinions to *State v. Todaro,* 131 *N. J. L.* 430 (*E. & A.* 1944) which the Supreme Court of the United States dismissed for lack of a substantial federal question citing *Tot.* 323 *U. S.* 667, 65 *S. Ct.* 73, 89 *L. Ed.* 542 (1944).

States Supreme Court in *Tot* specifically said: "This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case." *Tot, supra,* 319 *U. S.,* at 468, 63 *S. Ct.,* at 1245, 87 *L. Ed.* 1524. The inference, simply, must not be "so strained as not to have a reasonable relation to the circumstances of life as we know them * * *," *Id.,* and we have interpreted *Tot* to mean only that it must be more likely than not that the facts proven point to the fact inferred.

The *Carter* court apparently believed that use of the inference would constitute a lowering of the State's burden of persuasion in violation of due process. The defendant's guilty knowledge is an element of the crime in the present case; thus it must be proved by the State beyond a reasonable doubt. Since we have held that the inference of guilty knowledge is sufficient if it more likely than not comports with common experience, does this reduce the burden of persuasion below a "reasonable doubt" standard? The crux of the matter is that it would, only if the jury were *compelled* to draw the inference and convict on the basis of possession alone; that is, if the burden of proof of guilty knowledge were taken from the State. See *United States v. Allegrucci,* 258 *F. 2d* 70 (*3d Cir.* 1958); *Balman v. United States,* 94 *F. 2d* 197 (*8th Cir.* 1938). But the inference is permissive only. The jury is free to accept or reject the inference, since according to the statute, possession of stolen goods merely "authorizes" conviction. The statute recognizes only an inference of "probable reasoning, as to which the court may lay down logical tests for the guidance of the jury, but can impose no positive binding rule." 1 *Wharton, Criminal Evidence* § 193, at 203 (*11th ed.* 1935); see *State v. Corby,* 28 *N. J.* 106, 114 (1958). Thus the burdens of proof and persuasion remain with the State, and the defendant's possession has the effect simply of one circumstance to be considered by the jury in deciding whether the State has proved

guilty knowledge beyond a reasonable doubt. This was properly explained by the trial judge in his charge.

In *Gainey, supra,* in referring to similar language of jury authorization, the United States Supreme Court said:

> "Even if it be found that the defendant had been present at the still, and that his presence remained unexplained, the jury could nonetheless acquit him if it found that the Government had not proved his guilt beyond a reasonable doubt." 380 *U. S.* at 70, 85 *S. Ct.* at 759, 13 *L. Ed.* 2d at 664.

As in *Gainey,* even if the jury found in this case that the defendant possessed the stolen goods, and that such possession remained unaccounted for, the jury could nonetheless acquit him if it found that the State had not proved his guilt beyond a reasonable doubt.

B. It is also argued that *N. J. S.* 2A:139-1 is unconstitutional on its face because it restricts the trial court's powers over the judicial proceeding. Of course, if the effect of our statute is to prevent the trial judge from granting a motion for a judgment of acquittal, even though the facts in the case are such that no jury could reasonably base a conviction on them, then the protections inherent in a trial by jury are emptied of substance. No defendant should be subjected to a jury which can do more than speculate on the evidence before it. We do not, however, construe the provision in *N. J. S.* 2A:139-1 that unexplained possession of stolen property "shall be deemed sufficient evidence to authorize conviction" as in any way curtailing the judge's traditional power. As was said in *Gainey* in interpreting similar language in the federal statute:

> "The language permits the judge to submit the case to the jury on the basis of the accused's presence alone, and to this extent it constitutes congressional recognition that the fact of presence does have probative worth in the determination of guilt. But where the only evidence is of presence the statute does not require the judge to submit the case to the jury, nor does it preclude the grant of a judgment notwithstanding the verdict." 380 *U. S.* at 68, 85 *S. Ct.* at 758, 13 *L. Ed.* 2d at 663.

■ Corresponding to the jury's power to ignore the inference if the State has not adequately proved its case, the trial judge may find, in analyzing the evidence before him, that the inference of guilty knowledge arising from possession is so weak in the factual context of the particular case that the case should not be submitted to the jury. A statutory rule of evidence of this kind, in order to be constitutionally justifiable, cannot impinge upon the trial judge's "responsibility for safeguarding the integrity of the jury trial, including the right to have a case withheld from the jury when the evidence is insufficient as a matter of law to support a conviction." *Id.* See *State v. Lewis, supra,* 93 *N. J. Super.,* at 214–215. We agree with the reasoning in *Gainey* and hold that in prosecutions under *N. J. S.* 2A:139–1 the trial judge is not deprived of his normal judicial powers.

■ C. Defendant contends that by reading to the jury the five defenses which are specifically contained in the statute, the judge thereby unfairly narrowed the area of available defenses (see *N. J. S.* 2A:139–1, reproduced in footnote 1), and shifted the burden of persuasion to the defendant. We have no doubt that if the jury were to be given the impression that the only way a defendant can be acquitted is if he comes within one of the five specific categories, the defendant could be prejudiced. See *State v. Laster, supra,* 69 *N. J. Super.,* at 510, holding that "the statute in no way prohibits an accused from asserting any defense he chooses." In the present case, however, the jury was not misled. Besides giving proper instructions that all elements of the crime, including guilty knowledge, must be proved beyond a reasonable doubt (see footnote 2, *supra*), the trial judge emphasized more than once in his charge that if the testimony of Melillo were to be believed, this would constitute a complete defense. Melillo's testimony provided the basis for the defendant's exculpatory claim that he did not receive and have knowing possession of the stolen goods. Thus the jury could not have been given the impression that only the five defenses specified in the statute would qualify

the defendant for an acquittal. In fact, ordinarily these specific examples of defenses in the statute operate for the benefit of the accused, guiding the trial judge in his consideration of a motion for a judgment of acquittal, and reminding him, in the absence of evidence other than mere possession, that the Legislature recognized that certain factual patterns in particular would warrant a rejection of the State's case.

As for placing a burden on the defendant, which we have discussed above, the fact that the judge explained to the jury that the authorized inference and the specific defenses could be disregarded, if they so chose (based on their evaluation of all the evidence), while at the same time stating that all elements of the crime, identity of the goods, possession, and guilty knowledge, had to be proved by the State beyond a reasonable doubt, made it clear to the jury that no part of the burden had shifted to the defendant.

D. Defendant contends further that the use of *N. J. S.* 2*A* :139-1 in the present case contravenes his fifth amendment privilege against compulsory self-incrimination. This argument has two facets: First, whether on its face, the statute compels a defendant to take the stand to explain his possession of the stolen goods; and second, in the present case, whether the judge in his charge adversely commented on the defendant's failure to testify. There is no doubt that the fifth amendment protects a defendant against compulsory self-incrimination, *Malloy v. Hogan,* 378 *U. S.* 1, 84 *S. Ct.* 1489, 12 *L. Ed. 2d* 653 (1963), and forbids comment by the judge and prosecutor on a defendant's failure to testify. *Griffin v. California,* 380 *U. S.* 609, 85 *S. Ct.* 1229, 14 *L. Ed. 2d* 106 (1965).

The pertinent part of *N. J. S.* 2*A* :139-1 requires that "the accused show" the various defenses "to the satisfaction of the jury." This language does not require that the defendant must *personally* explain his possession of stolen goods to the jury. The inference of guilt arising from the unexplained possession may be met by evidence other than that of the

defendant. Indeed, evidence adduced by the State, or evidence which the State fails to adduce, may be sufficient to preclude any adverse inference. There is nothing in the statute which compels the defendant himself to offer evidence. See *People v. Moro,* 23 *N. Y.* 2*d* 496, 297 *N. Y. S.* 2*d* 578, 245 *N. E.* 2*d* 226 (1969); *Commonwealth v. Wilbur, supra,* 353 *Mass.,* at 383, 231 *N. E.* 2*d,* at 925; *Herman v. United States,* 289 *F.* 2*d* 362, 367 (5*th Cir.* 1961). The compulsion inherent in this situation is not significantly different from the normal impulse to come forward and explain if the State were to produce an eyewitness to DiRienzo's illegal receiving of the goods. If he chose to rebut the witness's testimony, his decision could not effectively be claimed to have been compelled in violation of the fifth amendment. See *Anglin v. State, supra,* 244 *Md.* at 659, 224 *A.* 2*d* at 674.

The question remains whether the judge's charge in the present case unfairly commented upon the defendant's failure to testify. In facing a similar situation, the United States Supreme Court in *Gainey* said: "[I]n the context of the instructions as a whole, we do not consider that the single phrase 'unless the defendant by the evidence in the case and by proven facts and circumstances explains such presence to the satisfaction of the jury' can be fairly understood as a comment on the petitioner's failure to testify. *Cf. Bruno v. United States,* 308 *U. S.* 287, 60 *S. Ct.* 198, 84 *L. Ed.* 257. The judge's overall reference was carefully directed to the evidence as a whole, with neither allusion nor innuendo based on the defendant's decision not to take the stand." 380 *U. S.* at 70–71, 85 *S. Ct.* at 759, 13 *L. Ed.* 2*d* at 664–665.

Compared to Gainey, the present case is less vulnerable to a constitutional attack based on *Griffin, supra,* for the following reasons: First, our statute, which was also read to the jury, uses the work "show" rather than "explains" to the jury's satisfaction, carrying with it a much less personal connotation. Second, and more important, at the request of the defendant the judge carefully instructed the jury that

the defendant had a constitutional right to remain silent, and that they were "not to consider for any purpose or in any manner in arriving at your verdict, the fact that the defendant did not testify, nor should that fact enter into your deliberations or discussions in any manner or at any time." And third, the judge repeated that the testimony of a defense witness, Melillo, if believed, would be sufficient by itself to warrant an acquittal.

We are satisfied that *N. J. S.* 2*A* :139–1 neither unfairly compels an accused to take the witness stand nor, as qualified by the judge's charge in this case, constitutes a prohibited comment on the defendant's failure to testify.

E. For the reasons set forth above, we uphold the constitutionality of *N. J. S.* 2*A* :139–1 as applied in the present case. Because use of the inference may often approach a violation of the defendant's essential rights, however, we think it necessary to reiterate our conclusions for the guidance of trial courts.

In considering a motion for a judgment of acquittal, the trial judge should not be fettered by the statute, but should be free to withhold a case from the jury where reasonable men could not differ as to whether the inference should be drawn. Among the considerations to be weighed is whether, in the factual context of the case, reasonable men could say that the inference permitted by the statute comports with common experience, recognizing that the Legislature has determined that ordinarily, possession within a year has probative worth in the determination of guilty knowledge. If the judge concludes that the case should be submitted to the jury, and the inference charged, he should take pains to point out the permissive nature of the inference. Since the inference is not conclusive, it is to be weighed in connection with the State's burden of proving every element of the crime beyond a reasonable doubt. As part of this burden, the jury should be reminded that possession of stolen goods within a limited time from their theft is not, in and of itself, a crime. It is possible under our

law for a man to possess such goods and remain innocent. But such possession, if any, is a circumstance to be considered along with all the evidence in determining whether the possession was unlawful.

The language used by the judge in charging the inference should make it clear that the defendant is under no compulsion to come forward personally and explain his possession. A phrase couched in impersonal terms such as "unless possession is satisfactorily accounted for" would make it clear that the inference may be rebutted by the evidence as a whole, and not by the defendant alone.

Since the defendant is not to be limited in his defense to the five specific categories in *N. J. S.* 2A:139–1, nothing is gained by reading them to the jury. Although it is true, in the present case, that the judge qualified his reading of the statute to the jury so that there was no reversible error, we believe that any reference to the statute ought to be omitted. See *Gainey, supra,* 380 *U. S.*, at 71, *n.* 7, 85 *S. Ct.* 754, 13 *L. Ed. 2d*, at 664, *n.* 7; *cf. State v. Gardner,* 51 *N. J.* 444, 455 (1968). The statute, preferably, should be used as an evidential guide to the judge, reminding him, and the jury through him, that while the State must prove guilty knowledge beyond a reasonable doubt, an inference of knowledge from recent possession ordinarily comports with common experience. See *McCormick, Evidence* (1954) § 313, *pp.* 654–663; Soules, *Presumptions in Criminal Cases,* 20 *Baylor L. Rev.* 277 (1968); Comment, *The Constitutionality of Statutory Criminal Presumptions,* 34 *U. Chi. L. Rev.* 141 (1966); Note, *Constitutionality of Rebuttable Presumptions,* 55 *Colum. L. Rev.* 527 (1955).

### III

Defendant argues that error occurred as a result of the following cross-examination of defense witness Yolanda Cuomo:

"[By the State]

Q. I ask you, Miss Cuomo, are you a friend of the defendant?
A. Yes.
Q. You are

Have you ever told anyone you were afraid of the defendant? * * *

[Objection by defense counsel—overruled] The Witness: No.
Q. I direct your attention to your statement of July 30, 1967, and without reference to the question which relates to Mr. Di-Rienzo, I ask you to read that answer to yourself, first.

Have you read it? A. Yes.
Q. Now, I ask you if you at that time signed this statement bearing this answer. 'No I have not heard them speak to each other since that time, every time Joe [the defendant] comes around I stayed away from him because he is a dangerous man and I am very much afraid of him and I don't want to bother with him.'

* * * [defense counsel moved for mistrial — denied]
Q. Did you give that answer at that time? A. Yes."

Defendant contends that the trial judge abused his discretion in not granting the motion for a mistrial or in not giving the jury a limiting instruction. We cannot agree. Generally, a motion for a mistrial should be granted only in those situations which would otherwise result in manifest injustice. In the present case, Miss Cuomo's above testimony was admissible for a dual purpose. First, as a defense witness the credibility of her testimony was subject to impeachment, and her prior inconsistent statement could be used accordingly. *State v. Salimone,* 19 *N. J. Super.* 600, 608 (*App. Div.* 1952); *N. J. Rule of Evidence* 20. And second, it is relevant to the weight to be attributed a witness's testimony to show that the witness may be testifying in fear of retaliation by the defendant. *Haver v. Central R. R. Co.,* 64 *N. J. L.* 312 (*E. & A.* 1900). It is well established that "[e]very fact or circumstance tending to show the jury the witness' relation to the case or the parties is admissible to the end of determining the weight to be given to his evidence." *State v. Spruill,* 16 *N. J.* 73, 78 (1954). The granting of a mistrial is within the sound discretion of the trial judge, and we cannot conclude that in the circumstances of this case the judge abused this discretion.

384

 While a motion for a mistrial was properly denied due to the admissibility of Miss Cuomo's statement, the question of a limiting instruction is not so readily concluded. Referring to DiRienzo as "dangerous" reflects on his character, a subject not at issue in this case. Ordinarily if a statement is admissible for one or more purposes (here credibility and motive), and not admissible for another (character), the judge should caution the jury as to the proper scope of the evidence. *State v. Marchand,* 31 *N. J.* 223 (1959); *Rules of Evidence* 6 *and* 47. In this case, however, no request was made by the defendant for a limiting instruction. While it is no doubt true that a judge has the discretionary power to give a limiting instruction on his own motion (see *Rule of Evidence* 6), we hold that in the circumstances such an omission did not constitute error of reversible proportion.

## IV

 On this appeal, defendant contends for the first time that the various items which were taken by the police from his apartment and his automobile were seized in violation of his fourth amendement rights, and thus their introduction at trial was improper. No motion in accordance with the rule of court was made in advance of trial to suppress the evidence taken by the police, nor was any objection to the evidence as the product of an unconstitutional search made at the trial. *R. R.* 3:2A–6(a). No justification has been offered by the defendant for his failure to invoke what we have held on several occasions to be a reasonable rule which must be met if there is to be order in the judicial process, *e. g., State v. Broxton,* 49 *N. J.* 373, 388 (1967); *State v. Fair,* 45 *N. J.* 77, 86 (1965).

 In any event, although the issue is not properly before us, we note that the defendant's substantive claims are without merit. The affidavit of Detective Scott supporting the search warrants was based on the statement of

Melillo, who was in the custody of the East Orange police at the time. The defendant characterizes Melillo as an unreliable informant. Melillo admitted in his statement to Detective Scott that he and the Defendant had committed the Chatham burglaries, and that the stolen items were in DiRienzo's apartment. This statement, coming as an admission against interest from an actor in the crime, was buttressed by the following facts contained in the affidavit:

1. At the time he was apprehended, Melillo was driving an automobile which had been fraudulently obtained from a rental agency by the use of a credit card issued to Mr. Tiley, one of the victims of the Chatham burglaries.

2. Detective Scott verified Melillo's knowledge of the burglaries in Chatham and the identification of the items stolen by a call to the Chatham police headquarters.

The facts in Detective Scott's affidavit provide ample substantiation of Melillo's statement. As we have held, hearsay is an adequate basis for finding probable cause and the issuance of a warrant, so long as there are facts which give the statement an appearance of trustworthiness. *State v. Kasabucki*, 52 *N. J.* 110, 116 (1968). See *Spinelli v. United States*, 393 *U. S.* 410, 89 *S. Ct.* 584, 21 *L. Ed. 2d* 637 (Jan. 27, 1969); *Coyne v. Watson*, 282 *F. Supp.* 235, 236–238 (*S. D. Ohio* 1967), affirmed, 392 *F. 2d* 585, *certiorari* denied, 393 *U. S.* 951, 89 *S. Ct.* 372, 21 *L. Ed. 2d* 362 (1968).

With regard to the travel kit which was taken from the defendant's automobile in the apartment parking lot, the only evidence in the case is that the kit was lying on the back seat of the car in the officer's plain view. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 *U. S.* 234, 236, 88 *S. Ct.* 992, 993, 19 *L. Ed. 2d* 1067, 1069 (1968); *State v. McKnight*, 52 *N. J.* 35, 56 (1968).

## V

■ Defendant's next contention is that the brown envelope with Mr. Tiley's initials, the Bank of Lebanon, Pennsylvania bag, the Seagram's Crown Royal bag and the leather travel kit all were introduced in evidence without having been specified in the indictments (although the bank bag and Seagram's bag were mentioned in the search warrants). The indictments had mentioned only the wrist watch and the rare coins. The argument is that introducing the unspecified items into evidence at trial surprised the defendant and rendered him unable to prepare an adequate defense. We cannot agree. There was no need for the State to indict the defendant for possession of the relatively valueless items taken by the police. As articles in evidence, they were relevant to the identification of the watch and coins as stolen property because they belonged to the owners of the watch and coins and disappeared at the same time. Moreover, the kit which was taken from defendant's car was important in that it tended to discredit the defense's story that DiRienzo was away on a trip at the time of the alleged delivery of the stolen goods to his apartment. See *State v. Popick*, 83 *N. J. L.* 318 (*Sup. Ct.* 1912); *Wertheimer & Goldberg v. State*, 201 *Ind.* 572, 169 *N. E.* 40, 68 *A. L. R.* 178 (1929). The defendant has not suggested in any way how he was hampered in the preparation of his defense by the absence of these items from the indictments. The defense was that Melillo purchased the stolen goods and placed them in the apartment for his own use. The number of items was clearly irrelevant to this defense. We find no error.

## VI

■■ Defendant contends that by sentencing him to consecutive sentences pursuant to two indictments consolidated for trial, he is in effect being punished twice for a single offense. One indictment charged him with unlawfully receiving the Tileys' stolen wrist watch; the other concerned

Mr. Reese's coin collection. While consecutive sentences would be warranted following a conviction for the two thefts, in a receiving stolen goods case the burden is on the State to show that the receipt of the goods occurred separately. In the present case, the State concedes that there was an absence of proof in its case as to when and how the goods were received. The evidence on this point, if any, indicated that the defendant's receipt of the goods was a single event, and thus punishable as one crime. *People v. Smith,* 26 *Cal.* 2d 854, 161 *P.* 2d 941 (1945); see *State v. Whittle,* 52 *N. J.* 407, 411–412 (1968). We therefore hold that the two consecutive sentences should be deemed to be a single sentence of from three to five years.

## VII

The remaining issues raised by the defendant are without merit and warrant little discussion. The apparent one-day disparity in the dates marked on the affidavit and the first search warrant was merely an inadvertence, as the issuing judge so certified. Examination of the record satisfies us that the trial was conducted fairly by the judge, and the charge read as a whole set forth the controlling legal principles and factual issues to be considered by the jury. Certainly no portion of the charge amounted to plain error, the burden which the defendant must meet in view of his failure to object to the charge. *R. R.* 1:5–1(*a*). Finally, the record clearly demonstrates that there was ample evidence upon which the jury could base a verdict of guilty.

The judgment of conviction is affirmed and the sentence modified in accordance with this opinion.

*For affirmance* — Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 6.

*For reversal* — None.