UNITED STATES of America ex rel.
Joseph A. DiRIENZO, Appellant,

v.

Howard D. YEAGER, Principal Keeper
of the New Jersey State Prison
at Trenton.

No. 19318.

United States Court of Appeals,
Third Circuit.

Submitted April 19, 1971.

Decided June 4, 1971.

Joseph A. DiRienzo, pro se.

Joseph P. Lordi, Essex County Prosecutor, Newark, N. J. (John DeCicco, Legal Asst., David S. Baime, Asst. Prosecutor, Irvington, N. J., on the brief), for appellee.

Before SEITZ, ADAMS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Joseph DiRienzo was convicted by a jury in the Superior Court of Essex County, New Jersey, under two indictments consolidated for trial, charging him with receiving stolen goods in violation of N.J.S.A 2A:139–1. He was sentenced to two consecutive prison terms of three to five years each. The New Jersey Supreme Court affirmed the convictions, but modified the sentences to a single term. State v. DiRienzo, 53 N.J. 360, 251 A.2d 99 (1969).[1]

Defendant petitioned the United States District Court for the State of New Jersey for a writ of habeas corpus, alleging that the state statute under which he was prosecuted was unconstitutional and that his conviction had been based upon the "fruits" of improper searches and seizures. The petition was denied on January 26, 1970 by Judge Reynier Wortendyke, and this appeal

---

1. The search and seizure issues raised in this appeal were also raised in the New Jersey Supreme Court and therefore DiRienzo has exhausted his state remedies. State v. DiRienzo, supra, 251 A.2d at 112–113.

followed, based solely on the search and seizure issues. We affirm.

On Tuesday, July 25, 1967, two apartments in the same building in Chatham, New Jersey, were broken into and among the items taken were a gold wristwatch belonging to Mrs. Charles Tiley and a leather travel kit containing a rare coin collection belonging to Mr. Herbert Reese. The following Sunday morning, July 30, 1967, an East Orange police officer took into custody Nicholas Melillo. Melillo told the police that he and DiRienzo had been involved in a number of robberies in the area, and that the stolen items were in DiRienzo's apartment. Melillo precisely described to the police a number of the items taken in the burglaries.

Based on the information obtained from Melillo, Detective Scott, of the East Orange Police Department, swore to an affidavit for a search warrant before the Municipal Court in East Orange. Supported by Detective Scott's affidavit, two search warrants were issued on July 30, 1967.[2]

On Sunday morning, July 30, 1967, the police arrived at the DiRienzos' apartment in East Orange with the first search warrant. DiRienzo and his wife were present. The stolen watch was being worn by DiRienzo's wife, and some of the stolen coins wrapped in tissue paper were found inside a dresser. DiRienzo was arrested and taken to police headquarters. Later that morning Detective Harris returned to DiRienzo's apartment and removed a leather travel kit from the back seat of DiRienzo's automobile which was parked at the rear of the apartment building. The kit had been used by Mr. Reese to store his coin collection. Although Detective Harris had no warrant to search the automobile, the automobile had been unlocked and the officer had been able to see the travel kit lying on the rear seat.

On the following day, July 31st, armed with a second search warrant, the police found in the defendant's apartment a bag with the inscription, "Bank of Lebanon, Pennsylvania," a "Seagram's Crown Royal bag" and a brown envelope with Mr. Tiley's initials on it. All these items were identified by Mr. Tiley as having been stolen from his residence. The brown envelope was found on the dresser in defendant's apartment, and the other items were in a cardboard box among some clothing belonging to DiRienzo.

At trial, DiRienzo called Melillo. Rebutting prior police testimony, Melillo testified that DiRienzo had allowed him to stay at DiRienzo's apartment on the night of Friday, July 28th and that the next day in Newark, Melillo bought a bag with the stolen items in it from a drug addict for $35, and denied having ever made a different statement to the police. Melillo stated that he returned to defendant's apartment with the bag, was admitted by the superintendent and placed the watch on the dresser and the rest of the items in a box. The superintendent testified that he had permitted Melillo to enter DiRienzo's apartment on Saturday according to DiRienzo's prior instructions, but did not notice whether Melillo was carrying anything when he went into the apartment. Mrs. DiRienzo testified that on Friday, July 28th, she and her husband went for a long automobile ride and stayed in a motel overnight in the Delaware Water Gap Area. She said they returned to the apartment on Saturday about ten o'clock p. m., that Melillo came to the door of the apartment after she had gone to bed and told her husband that he had left some things there and would pick them up the next day. Mrs. DiRienzo explained that she was wearing the watch the next morning because she wanted to persuade her husband to buy it from Melillo as a present.

---

2. The affidavit supporting the search warrant was dated July 31, 1967, but the New Jersey Supreme Court, based on the certification of the issuing judge, found this discrepancy to be an inadvertent clerical error. State v. DiRienzo, *supra*, 251 A.2d at 113.

Although DiRienzo did not move to suppress the evidence seized by the police prior to trial, as required by the New Jersey Revised Rules, R. R. 3:2A–6(a), and did not object to the evidence at trial, he now seeks collateral relief on the ground that his fourth amendment rights were violated by illegal searches and seizures. The District Court decided that the failure to object to the evidence in question was a strategic decision and thus a deliberate by-passing of state procedures within the meaning of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).[3]

However, we do not reach the issue whether DiRienzo deliberately by-passed state procedures and thus waived his right to challenge the constitutionality of the searches and seizures here in question, because we hold that under the circumstances of this case the police did not violate the fourth amendment. A review of two of the three searches clearly demonstrates the legality of the police conduct. Two of the searches were carried out pursuant to warrants, and as to these searches the only question raised is the sufficiency of the underlying affidavit. The third search was of an automobile, without a warrant, and as to the introduction of fruits of this search we find trial error—if any existed—to have been harmless.

The affidavit in question was sworn to by Detective Scott and essentially sets forth information he received from Melillo subsequent to his arrest. Melillo, the affidavit states, admitted committing numerous burglaries in Newark and Chatham, New Jersey, and implicated DiRienzo as his partner in crime. Further, Melillo described in great detail some of the items stolen in two burglaries in Chatham, and revealed that this booty was concealed in DiRienzo's apartment at 373 Park Avenue, East Orange, New Jersey.

■ The touchstone for judging the sufficiency of the present affidavit is Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1959), which provides a two-pronged test. First, the affidavit must establish the existence of probable cause, and second, if information from an informant is used to that end, the affidavit must demonstrate the reliability of the informant.[4] There is no doubt that the warrant here contains probable cause to believe DiRienzo was secreting contraband in his apartment. Even if we were not commanded by Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) to give great deference to a magistrate's determination of probable cause, the affidavit in this case would be more than sufficient in this regard. As stated in the affidavit, Melillo admitted that he and DiRienzo were partners in crime, that certain items particularly described were stolen,[5] and that such items were hidden in DiRienzo's apartment.

■ As to Melillo's reliability, the most prominent feature is that Melillo's admission is against his own penal interest. See United States v. Harris, 403 U.S. 573 (1971) 91 S.Ct. 2075, 29 L.Ed. 2d 723. Were this fact by itself inadequate to permit the magistrate to decide that Melillo was reliable, nonetheless the affidavit was sufficient because Detective Scott swore that he had veri-

3. Based on the trial transcript, the District Court found that DiRienzo's strategy was to demonstrate that the police bore a grudge against him and thereby to convince the jury to disbelieve the police testimony and ultimately to acquit him. Defense counsel's opening and closing statements would appear to support such a conclusion.

4. Under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), an affidavit must set forth sufficient circumstances underlying the affiant's conclusions to enable a magistrate to judge for himself whether probable cause exists.

5. Melillo stated that, among other items, he and DiRienzo had stolen a "Lady Hamilton white gold wristwatch and several rare coins."

fied much of the information supplied by Melillo. Such corroboration alone is sufficient to satisfy the reliability requirement. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In the affidavit, Detective Scott explained that he had verified personally the information supplied by Melillo by contacting the Chatham police department which confirmed that two recent burglaries had been committed and that rare coins and a Lady Hamilton white gold wristwatch had been stolen. In addition Melillo's admission that he and DiRienzo had also stolen several credit cards belonging to Mrs. Tiley was supported by the fact that at the time of his arrest Melillo was in possession of an automobile which had been rented with a credit card stolen from Mrs. Tiley. We hold, therefore, that Detective Scott's affidavit was sufficient to support the issuance of a search warrant.

 Turning to the search of DiRienzo's automobile, on the present record we are unable to say with certainty that there was probable cause to justify the search. After executing the first search warrant, a police officer observed a brown leather kit on the back seat of an automobile parked behind DiRienzo's apartment. The car was unlocked, and the officer seized the kit. At trial, Mr. Reese identified the kit as the one which had been used to store his rare coin collection. In addition, the Government proved that the automobile in question belonged to DiRienzo.[6] However, the present record is devoid of any indication that at the time of the search of the automobile the police knew that the vehicle belonged to DiRienzo or even that a brown leather kit had been stolen from Mr. Reese. Ordinarily, we would remand for an evidentiary hearing to determine whether the police officer was aware at the time of the search that the automobile belonged to DiRienzo and that the kit had been stolen. Townsend v. Sain, 372 U.S. 293, 83 S.Ct.

745, 9 L.Ed.2d 770 (1963). But in view of the facts of this case, a remand is unnecessary because the introduction at trial of the kit, even if illegally seized, was merely cumulative to the Government's already strong case, and thus was harmless error. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; United States v. Lape, 413 F.2d 816 (9th Cir. 1969); see United States ex rel. O'Connor v. New Jersey, 405 F.2d 632 (3rd Cir.), cert. denied sub nom. Yeager v. O'Connor, 395 U.S. 923, 89 S.Ct. 1770, 23 L.Ed.2d 240 (1969).

Accordingly, the judgment of the District Court will be affirmed.

---

6. If the police were aware of these facts at the time of the search, a warrantless search of the vehicle might have been permissible. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and cases cited therein.