STATE OF NEW JERSEY, IN THE INTEREST OF, A.A.M.

Superior Court of New Jersey
Chancery Division Family Part
Essex County

Decided June 23, 1988.

*Ronald Wigler,* Assistant Prosecutor, for State of New Jersey *(Herbert H. Tate, Jr.,* Essex County Prosecutor, Attorney).

*Jeffrey D. Ilardi,* Deputy Assistant Public Defender, for Juvenile, A.A.M.

HONIGFELD, J.S.C.

This opinion supplements reasons given in open court in deciding the probable cause and waiver eligibility aspects of a motion for waiver of a juvenile offender to adult court. The decision requires interpretation of the amendments to the juvenile waiver statute, *N.J.S.A.* 2A:4A–26, enacted as part of the Comprehensive Drug Reform Act of 1986 (*L.*1987, *c.* 106).

The sole evidence as to probable cause concerning the juvenile, A.A.M. (age 17) was the testimony of Detective George Lytwyn of the Newark Police Department, assigned to narcotics investigation. Detective Lytwyn received a tip from an informant that a blue Datsun with license plates in the window would come from New York with a male and female in it to the area of St. Rose of Lima School, in Newark, with a large quantity of cocaine to make a "drop." He set up surveillance in the area, which he knew to be a limited pedestrian one, around midnight or the early morning hours of January 22, 1988. He noticed a vehicle fitting the informant's description appear about one block from St. Rose School, an estimated 150 to 200 feet away, and observed it parked at that location for approximately one-half hour. It then began leaving, but Detective Lytwyn prevented its departure. A male, later identified as one Jose Rodriquez, was driving the vehicle, while A.A.M. was in the passenger seat. Neither occupant owned the vehicle. In the car were some 87 loose vials of what was believed to be crack on the floor and front seat, another 13 vials in an opened plastic bag, and two closed plastic bags containing 100 vials apiece. Total weight of the cocaine was later found to have been 60 grams.

No currency was confiscated, nor had any sales or other transactions been observed. A.A.M. was charged with possession of a controlled dangerous substance under *N.J.S.A.* 2C:35–10, possession with intent to distribute a controlled dangerous substance pursuant to *N.J.S.A.* 2C:35–5, as well as possession of same with intent to distribute within 1000 feet of school property, violative of *N.J.S.A.* 2C:35–7.

The pertinent provisions of *N.J.S.A.* 2A:4A–26, the juvenile waiver statute, provide:

Referral to another court without juvenile's consent

a. On motion of the prosecutor, the court shall, without the consent of the juvenile, waive jurisdiction of a case from the family court to the appropriate court and prosecuting authority having jurisdiction if it finds:

(1) The juvenile as 14 years of age or older at the time of the charged delinquent act; and

(2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute:

(a) Criminal homicide other than death by auto, strict liability for drug induced deaths, pursuant to N.J.S. 2C:35–9, robbery which would constitute a crime of the first degree, aggravated sexual assault which would constitute a crime of the second degree, kidnapping or aggravated arson; or

. . . .

(e) A violation of N.J.S. 2C:35–3, N.J.S. 2C:35–4, or N.J.S. 2C:35–5; or

. . . .

(3) Except with respect to any of the acts enumerated in subsection a.(2)(a) of this section, or with respect to any act enumerated in subparagraph (e) of subparagraph (2) of subsection a. of this section which involve the distribution for pecuniary gain of any controlled dangerous substance or controlled dangerous substance analog while on any property used for school purposes which is owned by any school or school board, or within 1000 feet of any school property or while on any school bus, or any attempt or conspiracy to commit any of those acts, the State has shown that the nature and circumstances of the charge or the prior record of the juvenile are sufficiently serious that the interests of the public require waiver.

However, if in any case the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted.

 Clearly, probable cause exists that A.A.M. possessed the controlled dangerous substance with the intent to distribute

same, violative of *N.J.S.A.* 2C:35-5. For establishment of probable cause, "no more is demanded than a well-grounded suspicion or belief that an offense is taking place and the individual is a party to it." *State v. Sims,* 75 *N.J.* 337, 347-348 (1978). The presence in a limited pedestrian area of Newark of a vehicle from New York containing a large quantity of cocaine (far in excess of the amount two individuals might possess purely for personal consumption), in the wee hours of the morning with neither the operator or passenger owning the car, and with the quantity being an even 300 vials, 200 of which were packed in two plastic bags containing exactly 100 vials each, are all circumstances implying that the vehicle's occupants possessed the vials of cocaine with the intention to distributing them. Under *State v. Brown,* 80 *N.J.* 587 (1979), the intent to distribute a controlled dangerous substance may be inferred from the facts and circumstances surrounding the possession.

A critical issue is whether the possession with intent to distribute a controlled dangerous substance charge, in this case, rises to the level of a so-called "Chart 1" offense for purposes of juvenile waiver. Our Supreme Court, in *State v. R.G.D.,* 108 *N.J.* 1 (1987) described "Chart 1" offenses as those serious crimes such as murder, robbery and sexual assault which are the prime candidates for waiver, and for which there is indeed a presumption or legislative preference for waiver. These offenses, unlike the other less serious waivable offenses designated "Chart 2" offense, do not require a showing by the State "that the nature and circumstances of the charge or the prior record of the juvenile are sufficiently serious that the interests of the public requires waiver," under *N.J.S.A.* 2A:4A-26. The "Chart 1" offenses are of a nature that charge itself is a sufficient reason justifying referral to the Law Division.

The key language in *N.J.S.A.* 2A:4A-26a.(3) on which this court must focus is "which involve the distribution for pecuniary gain." If there is probable cause that the possession with intent to distribute a controlled dangerous substance, with

which A.A.M. is charged, under *N.J.S.A.* 2C:35–5, was one which involved the distribution for pecuniary gain, it would be a "Chart 1" offense, having occurred well within 1000 feet of school property.

A.A.M. argues that the qualifying phrase "which involve the distribution for pecuniary gain" means that the State must present evidence of an actual transaction with the exchange of money. This Court disagrees with that restrictive interpretation. While "involve" has several related meaning the one most appropriate for this statute is "to relate closely, connect, link." *Websters Third New International Dictionary* (1969). Had the Legislature desired to limit the "Chart 1" waivable cases arising out of *N.J.S.A.* 2C:35–5 to those where actual sales occurred, it could easily have done so. Instead, it used the inclusive word "involve." The Legislature also could have excluded possession with intent to distribute altogether if it wished to remove this violation of *N.J.S.A.* 2C:35–5 from "Chart 1" waivable acts enumerated in *N.J.S.A.* 2A:4A–26a.(3), but elected otherwise.

It should be noted that what the amendment to the waiver statute does, in effect, is classify as "Chart 1" for purposes of waiver eligibility certain of the violations set forth in *N.J.S.A.* 2C:35–7. Indeed, the two statutes should be read *in pari materia* since both are part of the same legislation, the Comprehensive Drug Reform Act of 1986, effective in 1987. *N.J.S.A.* 2C:35–7 itself actually deals with a certain category of violations of *N.J.S.A.* 2C:35–5 (prohibiting manufacture, distribution and dispensing controlled dangerous substances, or possession of same with intent to manufacture, distribute or dispense), namely those occurring on or within 1000 feet of school property or a school bus. The Official Commentary to the Comprehensive Drug Reform Act notes that *N.J.S.A.* 2C:35–7 creates a drug safety zone around schoolyards, recognizing that children, often the targets of distribution, congregate there even before and after school hours and days when school is not

in session, and tries to keep drug free the area around the primary medium for educating the young on the dangers of drug use. The drug-free area around schools is made a 24-hour one, and a defendant is held strictly liable for illegal acts occurring within a protected zone. The only affirmative defense to the statute is an offense occurring within a private residence, with no juvenile present, and "the prohibited conduct did not involve distributing, dispensing, or *possessing with intent to distribute* or dispense *any controlled dangerous substance or controlled dangerous substance analog for profit.*" [Emphasis supplied] Of note is the fact that the statutory language delineating conduct excepted from the affirmative defense follows closely the language contained in *N.J.S.A.* 2A:4A–26a.(3), using also the verb "involve" and explicitly designating possession with intent to distribute for profit. This is obvious legislative recognition that possession of a controlled dangerous substance with intent to distribute it can be for a purpose of pecuniary gain.

What *N.J.S.A.* 2A:4A–26a.(3) does is to exclude all violations of *N.J.S.A.* 2C:35–7 which are not for profit from the "Chart 1" offenses for purposes of juvenile waiver. Its effect is to remove from "Chart 1" waivability the typical situation where a juvenile, for misguided social purposes, gives a controlled dangerous substance to a friend or acquaintance for personal consumption. The juvenile waiver statute thus targets the commercial juvenile distributors as the prime candidates for waiver, as opposed to the social distributors.

The remaining question on the issue of probable cause is whether the State has established probable cause that A.A.M.'s possession of cocaine with the intent to distribute same was for pecuniary gain. The reasoning of *State v. Brown,* that the overall circumstances proved by the State can give rise to inferences of possession with intent to distribute should be applicable to the additional element of pecuniary gain as well. Indeed, as our Supreme Court pointed out in *State v. DiRienzo,*

53 *N.J.* 360, 376 (1969), inference of an element of a crime may be drawn if what is inferred more likely than not comports with common experience; the fact-finder is free to accept or reject the inference.

The same facts giving rise to the inference that the juvenile's possession of the cocaine was with the intent to distribute it create the inference that the intended distribution was to be for pecuniary gain. It boggles the human mind to conceive of two people bringing to Newark shortly after midnight a quantity of cocaine contained in 300 vials, including two plastic bags of exactly 100 vials each, from New York City, in a New York registered car owned by neither occupant for a purpose other than commercial distribution. The inference is obvious that the cocaine was not for solely personal consumption of the vehicle's occupants or for social distribution. The quantity, packaging, time of the incident and obvious effort taken to transport the illicit substance obviously imply a monetary motive.

Probable cause thus exists that A.A.M. violated *N.J.S.A.* 2C:35–5 in a manner rendering the alleged violation a "Chart 1" offense for purposes of waiver. Simple possession of a controlled dangerous substance, with which A.A.M. is also charged, is not specifically enumerated in *N.J.S.A.* 2A:4A–26, thus the offense, without an additional showing of certain aggravating circumstances, is not waivable *per se*, even as a "Chart 2" offense. *N.J.S.A.* 2C:35–7 is not specified in the juvenile waiver statute; whether it is waivable in and of itself, however, is academic, since any violation of this specific section must also be proscribed by *N.J.S.A.* 2C:35–5, as discussed already. Any order for waiver based upon the allegations of possession with intent to distribute, however, must also include the allegations grounded in *N.J.S.A.* 2C:35–10 and *N.J.S.A.* 2C:35–7, since *N.J.S.A.* 2A:4A–26 contains the provision:

c. An order referring a case shall incorporate therein not only the alleged act or acts upon which the referral is premised, but all other delinquent acts arising out of or related to the same transaction.

Probable cause and waiver eligibility having been established, particularly of a "Chart 1" type of possession with intent to distribute a controlled dangerous substance, the ultimate decision on whether to order trial of A.A.M. as an adult must await such proofs as the parties adduce on the issue of probability of rehabilitation.