NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4772-15T2

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

  v.

TARIQ S. GATHERS,

       Defendant-Appellant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **March 21, 2017** |
| **APPELLATE DIVISION** |

Argued October 25, 2016 — Decided March 21, 2017

Before Judges Fisher, Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-11-1558.

Chanel J. Hudson, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Joseph J. Russo, Deputy Public Defender, of counsel; Ms. Hudson, on the brief).

Timothy M. Lanni, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Mr. Lanni, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

We granted leave to appeal to consider defendant's argument that the trial judge erroneously directed that he provide a

buccal swab. The State seeks the swab to determine whether defendant's DNA matches DNA that might be obtained from a handgun the State believes defendant unlawfully possessed. We reverse not only because the State failed to submit proper sworn statements, but also because the State has not ascertained whether DNA may be obtained from the handgun or, if that DNA were to become available, why it is not sufficient — before now seizing DNA from defendant — for comparison with information derived from DNA already taken from defendant and retained by the State as a result of a prior conviction.

The factual record is quite limited. Defendant was charged with second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4, second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), and fourth-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a), for conduct occurring in Jersey City on August 21, 2015. On April 22, 2016, eight months after the alleged offense and five months after the indictment — as defendant resided in the county jail awaiting trial — the State moved for an order authorizing the taking of a buccal swab of defendant's mouth.

The motion was only supported by a certification signed by an assistant prosecutor who asserted that:

- police received a call that "shots [were] fired" near 67 Clinton Avenue;

- in canvassing the area, police found a revolver lying "behind the back passenger tire of" a Chevrolet parked near 86 Sackett Street;

- police examined the revolver and discovered it contained five live rounds and one spent shell casing;

- police dusted the handgun and five bullets for fingerprints "with no results";

- police swabbed the handgun and prepared the swabs for submission to the state police CODIS[1] lab;

- a police detective went to a nearby hospital to speak with defendant, who had sustained an "entry wound . . . on the top part of his left knee with an exit wound on the lower part of his left leg," and, from the area of the wound and other information, officers "deduced that defendant likely shot himself";

- in the interview that followed, defendant "shouted out, 'so I shot myself, that ain't no charge!'";

- when asked to identify the weapon, defendant told police, "I don't know, a big ass revolver and it went off"; and

---

[1] CODIS refers to the Combined DNA Index System maintained in all fifty states and a number of federal agencies to collect DNA profiles to be used for, among other things, human identity testing. See N.J.S.A. 53:1-20.19; Maryland v. King, 569 U.S. __, __, 133 S. Ct. 1958, 1968, 186 L. Ed. 2d 1, 18-19 (2013).

A-4772-15T2

- upon inquiry about the location of the weapon, defendant said he "just 'dropped it.'"

Based on this hearsay,[2] the State sought the order in question, claiming a buccal swab was required "to make proper comparisons to the items of evidence which are currently being submitted to the New Jersey State Police." Defendant opposed the motion, arguing, among other things, that he was previously convicted of an offense that required a turnover of DNA and that because the State has access to that information, there is no need for an additional buccal swab.

On June 27, 2016, the trial judge granted the State's motion and entered an order compelling defendant to submit, within ten days, "to the taking of buccal swabs . . . for the purpose of identification by DNA analysis." The next day, the judge denied defendant's motion for a stay. Proceeding on an expedited basis, we granted leave to appeal and stayed the June 27 order, which we now reverse for the following reasons.

In explaining our decision, we could start and very well end with the language of the federal and state constitutions. In establishing the "right of the people to be secure" from "unreasonable searches and seizures" both federal and state

---

[2] The assistant prosecutor obviously lacked personal knowledge of any of these facts and circumstances.

constitutions declare that "no Warrants shall issue except upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.[3] The State's motion was supported only by an assistant prosecutor's certification consisting of nothing but hearsay — that which the prosecutor was told by others who themselves may or, for that matter, may not possess personal knowledge of the facts asserted. Consequently, the State's only certification conveyed no factual information to the judge and could not support the claim that there existed probable cause for the search. See R. 1:6-6; Gonzalez v. Ideal Tile Importing Co., Inc., 371 N.J. Super. 349, 358 (App. Div. 2004), aff'd, 184 N.J. 415 (2005), cert. denied, 546 U.S. 1092, 126 S. Ct. 1042, 163 L. Ed. 2d 857 (2006).

Second, even were we to overlook the inadequacies of the State's submission to the trial judge, and if we were to assume the judge was entitled to rely on the information provided by the assistant prosecutor — instead of information provided by individuals with personal knowledge — we would conclude that the search and seizure ordered by the judge is unreasonable.

Not all governmental intrusions are prohibited, only those that "are not justified in the circumstances, or which are made

---

[3] Except for the Fourth Amendment's capitalization of the words "warrants" and "oath," the state constitution is identical.

in an improper manner." Schmerber v. California, 384 U.S. 757, 768, 86 S. Ct. 1826, 1834, 16 L. Ed. 2d 908, 918 (1966). The "ultimate measure" of a governmental search is "reasonableness," which is assessed through a comparison of law enforcement needs with the individual's expectation of privacy and the depth of the intrusion. Maryland v. King, supra, 569 U.S. at __, 133 S. Ct. at 1969, 186 L. Ed. 2d at 20. In light of the circumstances presented, we conclude that the order issued by the judge on the prosecution's request authorizes an unreasonable search, chiefly because of the timing of the request.

For example, the reasonableness of a search would be judged differently if sought at the time of arrest rather than, as here, long after defendant's arrest. The search[4] sought by the State was not incidental to defendant's arrest where concerns related to placing an individual in police custody are heightened. It has been long and well established that an arrestee has an expectation of being searched, Maryland v. King, supra, 569 U.S. at __, 133 S. Ct. at 1970-71, 186 L. Ed. 2d at 21 (citing Weeks v. United States, 232 U.S. 383, 392, 34 S. Ct.

---

[4] There is no question that entering and removing biological material from an individual's mouth constitutes a search and seizure within the meaning of the federal and state constitutions. Maryland v. King, supra, 569 U.S. at __, 133 S. Ct. at 1968-69, 186 L. Ed. 2d at 19; State v. O'Hagen, 189 N.J. 140, 149 (2007).

341, 344, 58 L. Ed. 652, 655 (1914)), for reasons extending beyond a suspicion of unlawful activity. A search incident to an arrest may be necessary because of the potential that the arrestee is in possession of weapons. Michigan v. DeFillippo, 443 U.S. 31, 35, 99 S. Ct. 2627, 2631, 61 L. Ed. 2d 343, 348 (1979). In Maryland v. King, supra, 569 U.S. at __, 133 S. Ct. at 1970-74, 186 L. Ed. 2d at 21-25, the Court also recognized that, at the arrest stage, a search of the person is justified because of the governmental interests in: obtaining the arrestee's identity; ascertaining the arrestee's past criminal activity; determining the risks the arrestee poses for the facility's staff and other detainees; and in assessing the potential danger to society if the arrestee is released. Whatever search incidental to defendant's arrest was necessary to meet those legitimate concerns should have been satisfied long before the State filed the motion in question. The State does not argue otherwise and has not cited a single one of those concerns in seeking the search in question.

Moreover, the impact of an intrusion at the time an individual is arrested is not the same as when it occurs later, while the individual is awaiting trial. In assessing the magnitude of a buccal-swab intrusion in Maryland v. King, the Court described the lack of "physical danger," or "risk, trauma,

or pain," involved. 569 U.S. at __, 133 S. Ct. at 1979, 186 L. Ed. 2d at 31. Our Supreme Court has taken a similar view, describing the insertion of a buccal swab into an individual's mouth to remove biological material as "a very minor physical intrusion upon the person." O'Hagen, supra, 189 N.J. at 162. That circumstance is certainly unaltered by the timing of the search — whether upon arrest, while awaiting trial, or following conviction. But the Court in Maryland v. King also identified the "indignity" of the intrusion as a relevant concern in assessing the reasonableness of the search. 569 U.S. at __, 133 S. Ct. at 1979, 186 L. Ed. 2d at 31. That concern was irrelevant in Maryland v. King because the "indignity" of being subjected to a buccal-swab search "d[id] not increase the indignity already attendant to normal incidents of arrest." Ibid. Here, however, we are not considering the indignity at the arrest-stage, where it is minimalized or simply indistinguishable from the indignity of the arrest itself, as in Maryland v. King. Id. at __, 133 S. Ct. at 1980, 186 L. Ed. 2d at 32. This prosecution has long passed the arrest stage. The indignity of being forced to provide a buccal swab while defendant — presumed innocent — resides in the county jail awaiting trial is a legitimate concern that should be weighed against the alleged governmental interest when court approval for such a search is sought.

8                                                                    A-4772-15T2

And, quite obviously, we are not presented with an intrusion based upon the State's need to collect DNA upon the entry of a judgment of conviction, as permitted by the DNA Database and Databank Act of 1994, N.J.S.A. 53:1-20.17 to -20.37 (the DNA Act). Again, the State has not argued otherwise. Indeed, rather than rely on the extent to which the DNA Act may authorize DNA collection, the State recognizes that the DNA Act might be construed as precluding the search. For example, the last sentence of N.J.S.A. 53:1-20.22(b) prohibits the collection of blood or a biological sample if the State "has previously received a blood or biological sample from the convicted person." Despite recognizing this provision was intended to avoid repeated collection of biological samples from an individual — because, in the State's own words here, that would be "egregious," "wasteful," and "an unnecessary intrusion" — the State nevertheless seeks precisely that: an order permitting a seizure of a biological sample from defendant despite having already received such evidence from him as a result of a prior conviction.

Timing is everything. Assuming for present purposes defendant was arrested for an offense identified in N.J.S.A. 53:1-20.20, the proposed seizure of evidence from defendant's mouth as an incident of his arrest would likely be reasonable.

See Maryland v. King, supra, 569 U.S. at __, 133 S. Ct. at 1977, 186 L. Ed. 2d at 29. For defendants not previously convicted of crimes identified in the DNA Act, such a search after a conviction would also be reasonable. But not now. Not without probable cause, which the prosecutor's hearsay certification does not establish, and not without a legitimate governmental need for defendant's biological material.

To be sure, removing biological material from an individual's mouth with a buccal swab constitutes "a very minor physical intrusion," O'Hagen, supra, 189 N.J. at 162, but that intrusion must be weighed against the State's interest in seizing it. The only ostensible interest the State appears to invoke is its convenience.[5] It has not demonstrated a need for the biological material it seeks to extract from defendant.

The absence of the State's need for this evidence is readily apparent. As we have already observed, the State: has possession of the weapon; believes that any DNA that it might find on the weapon will, when compared to defendant's DNA, identify him as a person once in possession of the weapon; and

---

[5] The State asserted at oral argument that it had neither inspected the weapon for DNA nor compared any DNA found there with defendant's DNA in CODIS because of some operating procedure employed by its laboratory. We have been provided with nothing — no sworn statements and no written laboratory regulations — that would buttress the prosecutor's statement at oral argument.

has already available to it information possessed by CODIS from having previously collected a biological sample from defendant following an earlier conviction. The State, however, chooses not to connect the available dots. It prefers to intrude into defendant's mouth for additional DNA so that it may wrap up all its potential evidence in one neat package for its laboratory personnel.[6]

No matter how minimal that intrusion may appear to others, it nevertheless constitutes an invasion of defendant's legitimate privacy interests and requires him to suffer an unwarranted indignity while serving no legitimate governmental interest. We again emphasize what has long guided application of

---

[6] We observe but need not consider another possible reason for the State's interest in seizing this evidence before determining whether it has in its possession DNA on the weapon suspected to have been in defendant's possession. Profiling of a testable sample from the weapon — assuming such a sample may actually be found on the weapon — likely involves a range of subjective determinations. Providing an analyst with defendant's sample before profiling the crime scene sample presents a risk that the former may affect the analysis of the latter. "When analysts are given the known suspect's profile — as opposed to being asked what profiles are possible, given the results they have generated — the risk of erroneous attribution becomes heightened. An analyst may unwittingly fall prey to confirmation bias — seeing in the results what she expects to see, rather than what may or may not be there. . . . [E]ven the most conscientious forensic analyst may make the kind of subjective calls that risk an erroneous interpretation of DNA test results." Erin Murphy, The Art in the Science of DNA: A Layperson's Guide to the Subjectivity Inherent in Forensic DNA Typing, 58 Emory L.J. 489, 492 (2008).

the Fourth Amendment: the touchstone is reasonableness, and reasonableness is determined "by assessing, on the one hand, the degree to which [a search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Wyoming v. Houghton, 526 U.S. 295, 300, 119 S. Ct. 1297, 1300, 143 L. Ed. 2d 408, 414 (1999) (emphasis added); see also United States v. Knights, 534 U.S. 112, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001). In light of the record on appeal, we must conclude that the State has not suggested — let alone demonstrated — that it "needs" to search defendant's mouth. Consequently, what the State proposes, and what the judge ordered, is — plain and simple — unreasonable.

We conclude that in circumstances[7] like these the State must at least demonstrate probable cause for the search, i.e., in

---

[7] We do not interpret the DNA Act's prohibition on the repeated collection of biological samples as a bar to the relief sought by the State here. N.J.S.A. 53:1-20.20(i) declares that "[n]othing in this act shall be deemed to limit or preclude collection of DNA samples as authorized by court order or in accordance with any other law." The parties have not provided anything by which we might ascertain the scope or intent of this provision. Perhaps this provision was included within the DNA Act to avoid a conflict with the identification procedures of Rule 3:5A, which are permitted prior to the filing of a formal complaint — another circumstance not present here. In any event, we assume without deciding that N.J.S.A. 53:1-20.20(i) might authorize a biological seizure after an arrest and prior to conviction when supported by a legitimate prosecutorial need.
(continued)

A-4772-15T2

this case, that the item allegedly containing DNA actually contains DNA and, if it does, that the State has no other access to the accused's DNA for a comparison. Short of that, an individual must be free of an unreasonable — albeit minimal — governmental intrusion sought only for the State's convenience.[8]

The order under review is reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

(continued)
The State, however, has not demonstrated that N.J.S.A. 53:1-20.20(i) authorizes seizures pursued for the prosecution's mere convenience.

[8] It follows from what we have held about the timing of the State's application that we do not mean to suggest the search would be unreasonable if the State were to achieve a favorable comparison between any material removed from the seized weapon and the information contained in CODIS.