JUSTICE SOLOMON delivered the opinion of the Court.
**213 This interlocutory appeal raises two issues: (1) whether the State may rely solely on a hearsay certification to support a motion for an order to compel a buccal swab; and (2) whether the affidavit in this case provided sufficient probable cause to support the search.
Defendant was arrested after shooting himself in the leg with a gun. Eight *412 months after defendant's arrest and five months after his indictment on weapons charges, the State moved for an order compelling defendant to submit to a buccal swab so that his DNA profile could be obtained. In support of the motion, the State submitted a certification from an assistant prosecutor who claimed that the buccal swab was needed "in order to make proper comparisons to the items of evidence which are currently being submitted to the New Jersey State Police." The trial court granted the State's motion. The Appellate Division reversed, finding, in part, that the assistant prosecutor's certification could not establish probable cause sufficient to justify the search because it consisted of "nothing but hearsay" and it failed to demonstrate that the item of evidence -- a gun -- "actually contains DNA." State v. Gathers, 449 N.J. Super. 265, 269, 274, 156 A.3d 1108 (App. Div. 2017).
We affirm the judgment of the Appellate Division. First, although an affidavit of a police officer familiar with the investigation is preferable, a hearsay certification from an assistant prosecutor may support probable cause to compel a defendant to submit to a buccal swab if it sets forth the basis for the prosecutor's knowledge. Second, we hold that an affidavit or certification supporting probable cause to compel a buccal swab must establish a fair probability that defendant's DNA will be found on the evidence.
**214 I.
The record before the Appellate Division, including police reports and the certification in support of the motion to compel a buccal swab from defendant, reveals that two Jersey City police officers answered "a call of shots fired." While canvassing the area on foot, one of the officers discovered a Smith and Wesson .357 handgun on the ground behind the rear-passenger tire of a vehicle.
That same night, a Jersey City detective responded to Jersey City Medical Center to investigate reports that a male had been shot near the area where shots were allegedly fired. At the hospital, the detective encountered defendant who had sustained a bullet wound on the top part of the left knee and an exit wound on the lower part of his left leg. While officers examined defendant's pants, defendant said, "so I shot myself, that ain't no charge." In response to questioning about the weapon, defendant described it as "a ... revolver and it went off," and added that he had just "dropped it."
Meanwhile, the Jersey City Bureau of Criminal Investigations/Crime Scene Unit (BCI Unit) processed the scene where the gun was found. An examination of the gun revealed "5 bullets and 1 shell case (spent)." The gun, bullets, and shell casing were dusted for latent fingerprints, and "the grip, back strap, trigger, and five bullets from the cylinder" were swabbed for DNA evidence. The police report stated that "the swabs will be prepared for submission to the NJ State Police [Combined DNA Index System (CODIS) ][1] Lab[ ] for DNA profile, entry [into] CODIS and comparison to the data base."
**215 Ultimately, no fingerprints were retrieved from the gun or bullets and the record before the motion judge and Appellate *413 Division did not indicate when or if the swabs were submitted to the State Lab. Defendant's vehicle, which he drove to the hospital, was also photographed and police found "blood on the passenger side front floor board."
Three months later, a Hudson County grand jury indicted defendant for second-degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4 ; second-degree unlawful possession of a weapon, in violation of N.J.S.A. 2C:39-5(b) ; and fourth-degree certain persons not to have weapons, in violation of N.J.S.A. 2C:39-7(a).
Five months after defendant's indictment, the State moved for an order compelling defendant to submit to a buccal swab.[2] In support of the motion, the State submitted an assistant prosecutor's certification that claimed, in part, that:
10. A contributor to the DNA profile can only be obtained by means of a [b]uccal swab. References are needed [sic] the defendant in order to make proper comparisons to the items of evidence which are currently being submitted to the New Jersey State Police.
11. No previous application has been made to any court to compel buccal swabs from the defendant.
Defense counsel argued that the State had not "provided any sort of lab report to the defense wherein there is an indication that [defendant's] ... DNA is even in fact found on this gun at all" or any "information from the lab reports saying that they need his buccal swab for any sort of confirmatory testing or anything like **216 that." Defense counsel also noted that defendant was convicted of a separate drug offense in July 2015 and was ordered to provide a DNA sample pursuant to the New Jersey DNA Database and Databank Act of 1994 (the DNA Act), N.J.S.A. 53:1-20.10 to -20.28. Thus, according to the defense, the State could use defendant's DNA profile already in CODIS "in the investigation and prosecution of other crimes," obviating the need for a buccal swab.
The trial court granted the State's motion, finding that taking a buccal swab is "at the very low level of being intrusive to one's body." The court explained that, although the State needed a reason for its request, it was not required to show that DNA from the gun matched DNA from CODIS. The trial court then denied defendant's motion for a stay of the order, and defendant filed an emergent motion for leave to appeal to the Appellate Division.
The Appellate Division granted defendant's motion for leave to appeal and reversed the trial court's order. Gathers, 449 N.J. Super. at 267, 156 A.3d 1108. The panel reasoned that, even if the assistant prosecutor's hearsay certification could establish probable cause, the court's order authorized an "unreasonable search, chiefly because of the timing of the request," id. at 269-70, 156 A.3d 1108, and because the DNA Act does not justify the intrusion, id. at 272, 156 A.3d 1108.
The panel, quoting State v. O'Hagen, 189 N.J. 140, 162, 914 A.2d 267 (2007), *414 recognized that the nature of the buccal swab as a "very minor physical intrusion" remains unchanged regardless of the timing of the State's request but concluded that "[t]he indignity of being forced to provide a buccal swab while defendant -- presumed innocent -- resides in the county jail awaiting trial[3] is a **217 legitimate concern that should be weighed against the alleged governmental interest when court approval for such a search is sought." Gathers, 449 N.J. Super. at 271-72, 156 A.3d 1108. The panel also found that the State did not demonstrate a need for the DNA evidence because the State "has already available to it information possessed by CODIS" and the State did not show that the gun actually contained DNA. Id. at 273-74, 156 A.3d 1108. We granted the State's motion for leave to appeal. 230 N.J. 502, 169 A.3d 989 (2017).
Thereafter, defendant moved to dismiss the appeal as moot because it came to light that the gun was tested for DNA in 2016 and no DNA was found. We reserved judgment on the motion to dismiss. We now deny the motion because we choose to resolve this important constitutional question. See Joye v. Hunterdon Cent. Reg'l High Sch. Bd. of Educ., 176 N.J. 568, 583, 826 A.2d 624 (2003) (electing "to resolve [the] constitutional challenge [posed in that case] given its public significance and the likelihood 'that controversies similar to this one will present themselves in the future' " (quoting Clymer v. Summit Bancorp., 171 N.J. 57, 66, 792 A.2d 396 (2002) )); Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330, 676 A.2d 1065 (1996) ("[W]e will decide [moot] appeals where the underlying issue is one of substantial importance, likely to reoccur but capable of evading review."). We also granted the motions of the New Jersey Office of the Attorney General (AG), the County Prosecutor's Association of New Jersey (CPANJ), and the American Civil Liberties Union of New Jersey (ACLU) to participate as amici curiae.
II.
The pertinent arguments of the parties are as follows. The AG's and CPANJ's arguments largely mirror the State's contentions, and the arguments of the ACLU largely replicate defendant's contentions.
**218 A.
The State argues that the trial court and Appellate Division erred in their holdings and advances two contentions to support its proposition that the certification of the assistant prosecutor was adequate to demonstrate the governmental need for a buccal swab from defendant. First, the State alleges that the Appellate Division's holding is based on a flawed understanding of the DNA Act and CODIS. The State explains that the National DNA Index System (NDIS) Operational Procedures Manual (NDIS Manual ) "specifically delineates what DNA records are not eligible for upload in the system." Such records include "an item taken directly from a suspect," "DNA samples obtained from a suspect," and "an item for which the suspect's profile could reasonably be expected to be found that is at the crime scene." In this case, for example, in order to be CODIS-eligible, "the gun must originate from or be associated with a crime and the source of the resultant DNA must be attributable *415 to a putative perpetrator." Thus, according to the State, "a gun swab from a case involving a simple possessory offense requires a DNA reference from the suspect for comparison."
Moreover, the State notes that, due to chain-of-custody problems, many DNA collection kit profiles are not considered evidence. According to the State, even after a CODIS hit, the State usually applies for a confirmatory buccal swab to establish the chain of custody.
Second, the State argues that the certification in support of the motion for a buccal swab is permissible under New Jersey's search and seizure jurisprudence. The State avers that both state and federal law permit hearsay to establish the probable cause underlying a search. For support, the State relies on United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) ; State v. Novembrino, 105 N.J. 95, 120, 519 A.2d 820 (1987) ; and State v. Perry, 59 N.J. 383, 394, 283 A.2d 330 (1971). Citing Novembrino, 105 N.J. at 122, 519 A.2d 820, the State emphasizes that New Jersey utilizes a totality-of-the-circumstances **219 analysis to evaluate the validity of search warrants. Thus, the State alleges that the certification supplied by the assistant prosecutor, although not based on her personal knowledge of this case, was sufficient because the prosecutor had the police reports and police observation reports and provided the trial court with "an ample basis on which to review the State's request and determine if probable cause existed."
B.
Defendant argues that because the State can obtain his DNA from other sources, namely CODIS, there is no need for a buccal swab in this case. For support, defendant relies on the DNA Act's provision that "[n]o sample shall be drawn or collected pursuant to [the DNA Act] if the division has previously received a blood or biological sample from the convicted person ... which was adequate for successful analysis and identification." (quoting N.J.S.A. 53:1-20.22(d) ). Moreover, defendant points to Section 20.37(a) of the DNA Act, which mandates that the State Police retain any DNA profile information obtained from biological samples.
Most relevant to this appeal, defendant argues that the buccal swab "request is also problematic because the State failed to prove DNA was located on the gun and/or that [defendant's] DNA was indeed found." According to defendant, because the State has not shown that it submitted the DNA swabs from the gun to the State Lab for analysis, it cannot establish that defendant's buccal swab is necessary for comparison.
III.
A.
The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution similarly protect citizens against unreasonable searches and seizures. "[T]he Fourth Amendment's proper function is to constrain ... against intrusions which are not justified in the circumstances, **220 or which are made in an improper manner." Schmerber v. California, 384 U.S. 757, 768, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Thus, the Fourth Amendment's "protection is not against all searches and seizures, but only those that are unreasonable." O'Hagen, 189 N.J. at 149, 914 A.2d 267 ; see also Maryland v. King, 569 U.S. 435, 447, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013) (noting that "the ultimate measure of the constitutionality of a governmental search is 'reasonableness' " (quoting *416 Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 652, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) )).
"Whether a search is reasonable under the Fourth Amendment 'depends on ... all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.' " O'Hagen, 189 N.J. at 149, 914 A.2d 267 (quoting Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) ). In conducting a reasonableness analysis, a court must balance the "intrusion on the individual's Fourth Amendment interests against [the] promotion of legitimate governmental interests." Skinner, 489 U.S. at 619, 109 S.Ct. 1402 (quoting Delaware v. Prouse, 440 U.S. 648, 654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) ). "Generally, 'we strike this balance in favor of the procedures described by the Warrant Clause of the Fourth Amendment,' " O'Hagen, 189 N.J. at 149, 914 A.2d 267 (quoting Skinner, 489 U.S. at 619, 109 S.Ct. 1402 ), which provides that "no Warrants shall issue except upon probable cause, supported by Oath or affirmation," U.S. Const. amend. IV ; accord N.J. Const. art. I, ¶ 7. "Except in certain well-defined circumstances, a search or seizure ... is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." Skinner, 489 U.S. at 619, 109 S.Ct. 1402.
"Although probable cause 'eludes precise definition,' it is generally understood to mean 'less than legal evidence necessary to convict though more than mere naked suspicion.' " State v. Keyes, 184 N.J. 541, 553, 878 A.2d 772 (2005) (first quoting Wildoner v. Borough of Ramsey, 162 N.J. 375, 389, 744 A.2d 1146 (2000) ; then quoting **221 State v. Sullivan, 169 N.J. 204, 210-11, 777 A.2d 60 (2001) ). "This Court has characterized probable cause 'as a common-sense, practical standard for determining the validity of a search warrant.' " Ibid. (quoting Novembrino, 105 N.J. at 120, 519 A.2d 820 ). New Jersey has adopted a totality-of-the-circumstances test to determine whether warrants are based on probable cause. Id. at 554, 878 A.2d 772. Under that test, "courts must consider all relevant circumstances to assess the validity of a warrant." Ibid.
B.
"It is not disputed that a blood test or cheek swab for the purposes of obtaining a DNA sample is a 'search.' " O'Hagen, 189 N.J. at 149, 914 A.2d 267 (citing Skinner, 489 U.S. at 616-17, 109 S.Ct. 1402 ). Although this case involves the "minimal intrusion" of a buccal swab, the circumstances under which the swab was sought are different from those the Supreme Court considered in King. Unlike the Maryland Legislature, our State Legislature has not provided authority to take a defendant's buccal swab at any time prior to conviction except in specific circumstances. See N.J.S.A. 53:1-20.20. Furthermore, our statute allows for the taking of a buccal swab only at the time of booking or indictment for certain enumerated offenses. Ibid. This case does not present one of those offenses.
For that reason, we must consider the nature and quality of the evidence upon which the order was obtained. Here, the State relied upon an assistant prosecutor's hearsay certification to support its motion to compel defendant to submit to a buccal swab.
Hearsay may be sufficient to establish probable cause, provided it is trustworthy. See N.J.R.E. 101(a)(2)(D) (providing that rules of evidence may be relaxed to admit "relevant and trustworthy evidence in the interests of justice" in "proceedings to establish probable cause");
*417 State v. DiRienzo, 53 N.J. 360, 385, 251 A.2d 99 (1969) ("[H]earsay is an adequate basis for finding probable cause and the issuance of a warrant, so long as there are facts which give the statement an appearance of trustworthiness."); see **222 also Novembrino, 105 N.J. at 123, 519 A.2d 820 (holding that informant's tip may give rise to probable cause but court must consider "veracity and basis of knowledge" of informant as part of "totality" analysis). In other words, to support probable cause, there must be "something coupled with the hearsay to give it reasonable credit, something which gives it the appearance of trustworthiness." State v. Kasabucki, 52 N.J. 110, 117, 244 A.2d 101 (1968) ; see also Novembrino, 105 N.J. at 120-21, 519 A.2d 820 ("[W]e have permitted reliance on hearsay for the purpose of establishing probable cause, but have insisted that the officer's affidavit provide the warrant-issuing judge with a substantial basis for crediting the hearsay.").
IV.
A.
In applying those principles to the facts of this case, we stress that the State did not seek a buccal swab from defendant near the time of his arrest. See King, 569 U.S. at 461, 133 S.Ct. 1958.
The delay in administering the buccal swab affects the analysis relating to probable cause: although a buccal swab at the time of arrest or booking "does not increase the indignity already attendant to normal incidents of arrest," id. at 464, 133 S.Ct. 1958, we cannot presume the same for a swab nearly eight months after arrest, and five months after indictment. For that reason, the government's interest in obtaining a buccal swab in furtherance of the investigation or prosecution of defendant requires that probable cause be demonstrated. We therefore consider whether the affidavit, which was the sole support for the order to compel the swab in this case, sufficed to establish probable cause.
As a matter of legal principle, the hearsay nature of the assistant prosecutor's certification is not problematic in and of itself. Hearsay has long been admissible in affidavits to support search warrants, see DiRienzo, 53 N.J. at 385, 251 A.2d 99, and we **223 see no distinction to be made with respect to an order to compel a biological sample such as the swab at issue here.
We do note that an affidavit from a police officer familiar with the investigation would be preferable to an assistant prosecutor's hearsay certification as support for an application for a buccal swab. However, requiring affidavits from those with first-hand knowledge of the event to obtain judicial authorization for a search would be unduly burdensome and would deviate from our jurisprudence.
Nevertheless, although a hearsay affidavit can support a probable cause determination, it may not, on its own, be sufficient to show probable cause. To establish probable cause, the certification or affidavit must contain "facts which give the statement an appearance of trustworthiness." DiRienzo, 53 N.J. at 385, 251 A.2d 99. Thus, in circumstances like these, the hearsay certification or affidavit must at least establish the affiant's basis of knowledge. The State argues here that the assistant prosecutor relied upon police reports and police observation reports. However, those reports and their contents are not referred to in the assistant prosecutor's certification. The certification therefore failed to establish the basis for the assistant prosecutor's knowledge and, thus, to provide sufficient indicia of reliability to support a motion to compel the buccal swab on its own. Moreover, even if a supporting certification or affidavit establishes *418 the basis of knowledge, it still must satisfy the substantive requirements of probable cause.
B.
Finally, as we have noted, we consider the totality-of-the-circumstances test to determine whether the State has established probable cause. Keyes, 184 N.J. at 553-54, 878 A.2d 772. "Probable cause for the issuance of a search warrant requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.' "
**224 State v. Chippero, 201 N.J. 14, 28, 987 A.2d 555 (2009) (quoting United States v. Jones, 994 F.2d 1051, 1056 (1993) ).
In this case, that means we must assess whether the State established that taking defendant's buccal swab likely would lead to "evidence" that defendant possessed the gun. The assistant prosecutor's certification asserts that defendant's wound was inflicted near where the gun was found -- a fact that might reasonably lead to the conclusion that defendant's wound came from the gun recovered. However, such a fact does not establish that a buccal swab from defendant likely will produce evidence of a crime. Indeed, a buccal swab from defendant could produce evidence of a crime only if it could be compared to DNA from the gun.
In support of the motion, the assistant prosecutor did not provide a report, certification, or statement by a qualified investigator that there was a "fair probability" that the gun would bear defendant's DNA. Therefore, the State did not establish probable cause that evidence of a crime would be found.
Defendant also argues that the State already had defendant's DNA in CODIS and did not need a buccal swab for comparison. However, the NDIS Manual § 3.1.1.2 sets forth limitations and practices in the use of CODIS and provides that DNA samples related to possessory offenses are generally not eligible for upload in CODIS. Furthermore, according to the State Office of Forensic Sciences' Crime Gun DNA Swabs & DNA Analysis Submission Guidelines, a DNA swab will not be taken from a gun which is not CODIS eligible. State of New Jersey Office of Forensic Sciences, Crime Gun DNA Swabs & DNA Analysis Submission Guidelines (2016), http://www.njsp.org/division/investigations/pdf/ofs/gun_swab_policy.pdf.
Defendant's charges are all possessory crimes -- second-degree possession of a weapon for an unlawful purpose, second-degree unlawful possession of a weapon, and fourth-degree certain persons not to have weapons. Accordingly, we accept the State's **225 argument that a DNA sample from the gun is not eligible for upload in the CODIS system. In any event, the search was improper because of the State's failure to show probable cause. V.
In sum, the order to compel a buccal swab in this case needed to be predicated upon probable cause. To show probable cause in support of its motion for an order to compel, the State could rely on a hearsay affidavit that (1) set forth the basis of knowledge for the certification or affidavit and (2) established that there was a "fair probability" that defendant's DNA was on the gun. Without such information, and considering the totality of the circumstances, we conclude that the Appellate Division properly denied the State's application for an order compelling defendant's buccal swab. As a result, we affirm the Appellate Division's judgment.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion.

" 'CODIS' means the [Federal Bureau of Investigation]'s national DNA identification index system that allows the storage and exchange of DNA records submitted by State and local forensic laboratories." N.J.S.A. 53:1-20.19 ; see also State v. Gathers, 449 N.J. Super. 265, 268 n.1, 156 A.3d 1108 (App. Div. 2017) ("CODIS refers to the Combined DNA Index System maintained in all fifty states and a number of federal agencies to collect DNA profiles to be used for, among other things, human identity testing.").

"Buccal cell collection involves wiping a small piece of filter paper or a cotton swab similar to a Q-tip against the inside cheek of an individual's mouth to collect some skin cells." Maryland v. King, 569 U.S. 435, 444, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013) (quoting John M. Butler, Fundamentals of Forensic DNA Typing 5 (2010)). The United States Supreme Court has noted that the buccal swab "procedure is quick and painless. The swab touches inside an arrestee's mouth, but it requires no 'surgical intrusio[n] beneath the skin,' and it poses no 'threa[t] to the health or safety' of arrestees." Ibid. (alterations in original) (quoting Winston v. Lee, 470 U.S. 753, 760, 763, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) ).

The Appellate Division states: "On April 22, 2016, eight months after the alleged offense and five months after the indictment -- as defendant resided in the county jail awaiting trial -- the State moved for an order authorizing the taking of a buccal swab of defendant's mouth." Gathers, 449 N.J. Super. at 268, 156 A.3d 1108. However, the record does not definitively show that defendant was incarcerated on the present charges at the time the State made the motion for a buccal swab.