**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3380-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

TYJON A. WILLIAMS,

    Defendant-Respondent.

_____

Argued February 12, 2025 – Decided March 10, 2025

Before Judges Susswein and Bergman.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 21-10-0974.

David M. Liston, Assistant Prosecutor, argued the cause for appellant (Yolanda Ciccone, Middlesex County Prosecutor, attorney; David M. Liston, and Brittany J. Saxton, Assistant Prosecutor, of counsel and on the briefs).

Nadine Kronis, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer Nicole Sellitti, Public Defender, attorney; Nadine Kronis, of counsel and on the brief).

PER CURIAM

On leave granted, the State appeals from an order suppressing evidence consisting of an illegal firearm and a controlled dangerous substance (CDS) seized by law enforcement pursuant to a search warrant executed on the motor vehicle and residence of defendant Tyjon Williams. We address whether defendant satisfied his burden to overcome the strong deference provided to the issuing judge's finding of probable cause to issue the warrants. After our review of the record and the legal principles that apply, we conclude defendant failed to satisfy this burden and, therefore, we reverse.

I.

In September 2020, members of the Middlesex County Prosecutor's Office Narcotics Task Force (Task Force) met with a "credible confidential informant" (CI) regarding cocaine and heroin traffickers operating in Middlesex County. The informant had previously provided reliable information to law enforcement and identified defendant as an individual using a specific address in New Brunswick and driving a beige Mercedes Benz to facilitate drug distribution. The informant claimed to have obtained this knowledge through personal conversations and observations of defendant.

A-3380-23

During September 2020, the head detective of the Task Force executed an affidavit in support of an application for three search warrants which disclosed for three consecutive months after the informant's tip was received that physical and electronic surveillance of defendant was conducted at his residence. The affiant averred "independent observations and this investigation have corroborated [the] CI's information."

The affiant stated he had observed defendant engaging in behaviors consistent with narcotics distribution. The affiant also stated in September 2020, he had observed defendant exit his residence to meet with an individual. Defendant was observed handing a small unknown item to him, and in return was handed something back. At the time of the meeting with defendant, the individual had documented criminal convictions of assault, forgery, possession of a weapon, manufacturing of CDS, and possession of CDS near school property.

Thereafter, the affiant disclosed in October and November 2020 that physical and electronic surveillance of the defendant's residence continued where he again observed defendant engaging in actions consistent with street level narcotics distribution. Throughout the day, he observed defendant exiting

3

his residence and sitting in his vehicle in the driveway for long periods of time where several unidentified individuals approached his vehicle to meet with him.

The affidavit continued that on a separate occasion that month, an individual arrived in the area of defendant's home driving a silver Acura. A short time later, defendant left his residence, opened the front passenger door of his vehicle to retrieve something between the area of the center console and the glove compartment, and approached the Acura and handed something to the driver through the front passenger door. After the transaction, the Acura left the area. A subsequent investigation revealed the driver had criminal convictions for possession of CDS near school property, obstruction, aggravated assault, manufacturing CDS, and witness tampering.

During the third week of November, the affiant observed a gray Lexus arrive in the area of defendant's home and waited. Approximately twenty-five minutes later, defendant arrived in a black Nissan Pathfinder. Two males emerged from the Lexus and approached defendant. After a short conversation, defendant went inside his residence while the two men entered defendant's Mercedes and sat in the backseat. A short time later, defendant came out with a small black shopping bag in his right hand, opened the driver's side door and sat in the driver's seat. Defendant placed the bag near the center console of the

4

vehicle, and then handed something to the two backseat passengers. At the time, one individual seated in the back seat had documented criminal convictions for possession of a firearm, shoplifting, possession of CDS near school property, possession of CDS, manufacturing CDS, and conspiracy.

On November 25, the head detective of the Task Force applied for no-knock search warrants for defendant's home, his Mercedes, his person, and any individuals at or departing from the New Brunswick address provided in the application. On the same date, the judge reviewed and issued the search warrants. The Task Force executed the warrants on December 3, 2020 and found a handgun in a bedroom and approximately six ounces of marijuana in the Mercedes.

On October 19, 2021, a Middlesex County Grand Jury returned Indictment No. 21-10-0974, charging defendant with second-degree possession of a firearm while possessing CDS with intent to distribute, N.J.S.A. 2C:39-4.1; third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11)(a); third-degree possession of CDS with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7(a); and second-degree possession of CDS with intent to distribute within 500 feet of public property, N.J.S.A. 2C:35-7.1. A Middlesex County Grand Jury also returned Indictment

5

No. 21-10-0975, charging defendant with second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7(b)(1).

Defendant moved to suppress the firearm and CDS. On May 28, 2024, the court heard argument and granted the motion to suppress the evidence seized from defendant's home and car. In its oral decision, the court acknowledged that search warrants are presumed valid, that substantial deference must be given to the issuing judge, and that marginal or doubtful cases should favor sustaining the warrant. However, the court found the affidavit filed in support of the search warrants lacked probable cause. The court found:

> [T]hese warrants should never have been issued. There's no [probable cause] in this affidavit to support it. It's a general warrant. It doesn't particularize anything. The only thing it particularizes is that Mr. Williams is a bad guy because he has prior convictions for drug distribution in his past. In one instance. He's a bad guy because he has a gun possession in his past, and he's a bad guy because he's been convicted of possessing under [fifty] grams of marijuana on a number of different occasion[s].

The court also determined the State improperly relied on the criminal records of defendant and the other individuals, reasoning that "the reputation of the parties involved" was not relevant to probable cause. The court also determined there were critical omissions in the affidavit, including the lack of controlled purchases. Specifically, the court found

6

Without these controlled buys to confirm and support the officer's opinions . . . and because of what the case law that I just cited as the framework for particularized suspicion as to what crime we're dealing with and what is the need for the search of a particular home or a car or person, I'm going to have to grant the . . . defense's motion to suppress this because this was just a generalized approach to establishing probable cause for a generalized warrant, at best, and not anything that is consistent with what the law requires with regards to a particularized suspicion.

The court also noted the affidavit failed to identify the items exchanged as CDS or show that money transactions were made between the defendant and other individuals. The court thereupon suppressed the firearm and CDS.

On appeal, the State raises the following point:

POINT I

THIS COURT SHOULD REVERSE THE TRIAL COURT'S SUPPRESSION OF EVIDENCE BECAUSE THE EVIDENCE WAS SEIZED PURSUANT TO A LAWFUL AND JUDICIALLY AUTHORIZED SEARCH WARRANT.

Specifically, the State argues the motion court failed to provide the substantial deference to the issuing judge's determination of probable cause as is required. The State asserts the purpose for the deference given to a warrant-issuing judge's probable-cause determination is "[t]o encourage police to resort to search warrants rather than warrantless searches and to submit to the

7

superintendence of a neutral judicial officer," citing State v. Jones, 308 N.J. Super. 15, 30 (App. Div. 1998). The State further posits, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review," and "courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hyper-technical, rather than a commonsense, manner." Citing State v. Chippero, the State argues deference is owed to the determination of probable cause by the judge issuing the warrants, not to the motion court's de novo review overruling the prior judge's probable cause findings. 201 N.J. 14, 20-21 (2009).

## II.

Both the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect citizens against unreasonable searches and seizures. State v. Edmonds, 211 N.J. 117, 129 (2012); State v. Dangerfield, 171 N.J. 446, 455 (2002). To protect these constitutional rights, [law enforcement] must generally obtain a warrant before searching a person or their property. State v. DeLuca, 168 N.J. 626, 631 (2001).

"Probable cause for the issuance of a search warrant requires a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Gathers, 234 N.J. 208, 223 (2018) (quoting Chippero, 201 N.J.

A-3380-23

at 28) (internal quotation marks omitted). "[T]he probable cause determination must be . . . based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." State v. Boone, 232 N.J. 417, 427 (2017) (quoting State v. Marshall, 199 N.J. 602, 611 (2009)).

We "'pay substantial deference' to judicial findings of probable cause in search warrant applications." State v. Andrews, 243 N.J. 447, 464 (2020) (quoting State v. Kasabucki, 52 N.J. 110, 117 (1968)). "[A] search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable." State v. Keyes, 184 N.J. 541, 554 (2005) (citations and internal quotation marks omitted). If the court has any "[d]oubt as to the validity of the warrant," such doubt "should ordinarily be resolved by sustaining the search." Ibid. (quoting State v. Jones, 179 N.J. 377, 389 (2004)).

A judge may issue a search warrant based on information police receive from a confidential informant. Keyes, 184 N.J. at 555. There must be substantial evidence in the record to support the informant's statement. Ibid. Specifically, the court must examine the informant's veracity and basis of

A-3380-23

knowledge. Ibid. But "[a] deficiency in one of those factors 'may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" State v. Sullivan, 169 N.J. 204, 212-13 (2001) (quoting State v. Zutic, 155 N.J. 103, 110-11 (1998)); see also Jones, 179 N.J. at 389. An informant's "information will be deemed to have come from a trustworthy source if the informant provides 'sufficient detail in the tip or recount[s] information that could not otherwise be attributed to circulating rumors or easily gleaned by a casual observer.'" Keyes, 184 N.J. at 556 (quoting State v. Smith, 155 N.J. 83, 95 (1998)).

"When determining whether probable cause exists, courts must consider the totality of the circumstances, and they must deal with probabilities." Jones, 179 N.J. at 389 (quoting Schneider v. Simonini, 163 N.J. 336, 361 (2000)). Even "if the informant's tip fails to demonstrate sufficient veracity or basis of knowledge, a search warrant issued on the basis of the tip may still pass muster if other facts included in a supporting [police] affidavit justify a finding of probable cause." Id. at 390.

"The corroborating factors that may be considered by a court making a probable-cause determination on the basis of an informant's tip depend on the unique facts and circumstances presented in each case." Id. "The experience

that an officer submitting a supporting affidavit has in investigating and apprehending drug dealers constitutes another factor that a court should consider." Id.

> In addition, because we have recognized that a suspect's criminal record may be considered when determining probable cause to arrest, State v. Valentine, 134 N.J. 536, 550 (1994), it follows that a suspect's criminal record is also germane to a search analysis. See [State v.] Novembrino, 105 N.J. 95, 127 (1987) (considering interaction with person known to have prior drug-related arrest as factor in totality of circumstances); State v. Ebron, 61 N.J. 207, 213 (1972) (explaining that if defendant was a known drug user, that fact may be considered during probable-cause analysis).
>
> [Id. at 390-391.]

### III.

The motion judge found the lack of corroboration by a controlled purchase, the targeting of the defendant and the other individuals because they were "bad guys" based on their criminal records, the failure to observe money being exchanged and the failure to adequately identify the items exchanged as illegal CDS all amounted to insufficient probable cause to issue the warrants because there was no particularized suspicion shown. We disagree with those findings.

Based on our review of the affidavit in support of the warrant applications, we conclude there was sufficient probable cause to believe a search of the house and car would reveal evidence of a crime. The affidavit contained sufficient corroborative information obtained through a three month investigation after receipt of the informant's tip. In his affidavit, the detective detailed his substantial training and experience in detecting drug transactions. The detective observed defendant meeting and engaging in exchanges with other individuals which he determined, based on his experience, were consistent with drug transactions. The affidavit noted at least three separate instances where the detective directly observed exchanges between defendant and three other individuals all of whom had extensive criminal records related to the illegal possession or distribution of CDS.

We disagree with the trial court that police did not establish probable cause because they did not conduct a controlled purchase of CDS. We are aware of no legal authority to support the proposition that police are required to engage in a controlled purchase to verify their observations of suspected criminal transactions.

In addition, contrary to the motion court's findings, the affiant's reliance on the prior criminal records of defendant and three of the individuals

12

participating in the exchanges was relevant evidence permitted to be considered by the issuing judge in determining probable cause. We therefore conclude defendant's motion to suppress fell short in overcoming the substantial deference we are required to provide to the warrant issuing judge's finding of probable cause.

We reverse, vacate the trial court's order and remand for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3380-23