**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1602-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SAMANTHA E. BONORA,

     Defendant-Appellant.

_____

Argued August 6, 2025 – Decided August 19, 2025

Before Judges Sumners and Walcott-Henderson.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 24-04-0392.

Steven E. Nelson argued the cause for appellant (Nelson, Fromer, Crocco & Jordan, attorneys; Steven E. Nelson, of counsel and on the briefs).

Monica do Outeiro, Assistant Prosecutor, argued the cause for respondent (Raymond S. Santiago, Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

Raymond M. Brown argued the cause for amicus curiae Association of Criminal Defense Lawyers – New Jersey (Pashman Stein Walder Hayden, PC, attorneys; Dillon J. McGuire, of counsel and on the brief).

PER CURIAM

Defendant Samantha E. Bonora caused a tragic motor vehicle accident when she drove head-on into another vehicle traveling in the opposite lane of traffic after she entered that lane to pass a vehicle. The accident caused the death of the other vehicle's three-year-old child passenger and injured that vehicle's driver and two additional passengers. Post-accident toxicology reports of defendant's blood revealed the presence of several illegal substances. A search warrant was issued authorizing the State to obtain information in defendant's cell phone from the day of the accident and four years prior because there was probable cause to believe it contained evidence related to her violation of state criminal laws.

Defendant was subsequently indicted for first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and two counts of fourth-degree assault by auto, N.J.S.A. 2C:12-1(c)(2). She was also issued motor vehicle summonses for driving while intoxicated (DWI), N.J.S.A. 39:4-50, speeding, N.J.S.A. 39:4-98,

improper passing, N.J.S.A. 39:4-86, failure to maintain lane, N.J.S.A. 39:4-88, and driving with an expired license, N.J.S.A. 39:3-10(a).

After the search warrant was executed, defendant—asserting violations of her federal and state constitutional protections against unreasonable searches and seizures—moved to suppress the evidence seized from her cell phone, claiming the warrant lacked probable cause and was overbroad. The motion was denied.

After this court denied defendant leave to appeal the motion court's order, our Supreme Court granted her leave to appeal and directed us to consider the merits of her contentions. Having considered the record, the law, and the arguments by the parties and amicus curiae, the Association of Criminal Defense Lawyers – New Jersey, we reverse the order. We conclude defendant proved that the State failed to establish probable cause to search defendant's cell phone for information connected with the alleged offense of aggravated manslaughter and the warrant was overbroad in seeking information from four years prior to the offense and pertaining to violations of any state criminal law.

A-1602-24

I.

A.

Because defendant challenges the search warrant's validity, we limit our summary of facts set forth within the four corners of the State's affidavits by Howell Township Patrolman Daniel Scherbinski and Monmouth County Prosecutor's Office (MCPO) Detective Brian Jados. The warrants were submitted to allow a forensic examination of all data, information, applications, and the like of defendant's cell phone from January 1, 2020 through January 13, 2024, regarding violations of the state criminal laws.[1] See State v. Marshall, 199 N.J. 602, 613 (2009) (quoting Maryland v. Garrison, 480 U.S. 79, 85 (1987)) (explaining the validity of a search warrant "must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate").

Officer Scherbinski's Affidavit

Officer Scherbinski has nine years of police experience, having served in the patrol division and the traffic safety unit, and received specialized training

---

[1] The search warrant also sought information from the driving navigation units that were in defendant's vehicle. This is not the subject of defendant's appeal and will not be discussed.

A-1602-24

in traffic investigation and crash reconstruction. His experience includes investigating hundreds of serious and fatal motor vehicle accidents.

On January 13, 2024, defendant, driving her 2014 Dodge Ram, attempted to unsafely pass another vehicle in her traffic lane at a high rate of speed when she collided head-on with a 2021 Jeep Cherokee that was traveling in the opposite lane, driven by Joelle M. Williams. The accident caused the death of Williams' three-year-old daughter, significant injuries to Williams, and injuries to her passengers, her one-year-old son and sister. Witnesses at the accident scene described defendant as impaired based on her drooping eyes and slurred speech. A police officer's body camera footage depicted defendant's statements denying current substance use and claiming she was on her way to find an Alcoholics Anonymous meeting.

Ten days after the accident, police executed a search warrant on defendant's car, revealing a labeled bottle of methadone prescribed to defendant, a cell phone in an orange and pink case located near the driver-side floorboard (suspected to be defendant's), and two GPS navigation units. A search of defendant's driving record revealed she was convicted of DWI in 2010, and DWI and refusal to take a breathalyzer, N.J.S.A. 39:4-50.4a, in 2015. Police also

learned that defendant was arrested for possession of controlled dangerous substances (CDS) in 2020 and 2022, respectively.

Laboratory toxicology reports stated "that approximately [three] hours after the fatal collision, [defendant's] blood contained specific levels of [m]ethadone, EDDP, [m]orphine, [f]ree [m]orphine, [f]entanyl, [n]orfentanyl, [l]amotrigine, and an animal tranquilizer identified as [x]ylazine." Defendant was undergoing methadone treatment for opioid use disorder receiving 95mg of methadone daily. An unnamed forensic toxicologist indicated to the MCPO "that in evaluating the extent of a person's impairment, and any potential tolerance to substances, it is useful to learn the extent of the person's history with narcotic substances, including what narcotics were used, in what amounts, in what combinations, for how long, and how often."

Officer Scherbinski asserted there was "probable cause to believe that [] [defendant's] cell phone's contents from the date of January 1, 2020, through, until, and including January 13, 2024, will provide evidence relating to this investigation into [a]ggravated [m]anslaughter and [DWI]." He emphasized that drug transactions are frequently arranged via digital messaging or apps, and that location, contacts, and calendar data could provide evidence regarding the accident and defendant's substance use patterns. He requested authorization to

6

search all contents of the cell phone and the driving navigation units for the specified time period for any relevant evidence.

Detective Jados' Affidavit

Detective Jados has been employed in law enforcement since 2013, including stints as a detective in both the Hunterdon County Prosecutor's Office and MCPO. He has a Bachelor of Science degree in Information Technology and a graduate degree in Computer Forensics. He is certified as a Mobile Device Forensic Examiner, a Forensic Computer Examiner and a Computer Crime Examiner. He has testified in state court as an expert witness in the field of computer forensics.

Detective Jados claimed the warrant sought the search of "each electronic device identified in a forensically sound manner," noting that a comprehensive forensic extraction is necessary because of how data can be stored and interrelated throughout a device. He explained that a targeted extraction is often not feasible due to the complexity and commingling of data in modern devices. Forensic tools cannot extract only specific items without processing the whole device, and a manual "targeted" extraction would be prohibitively time-consuming. Furthermore, electronic devices can contain a wide variety of information relevant to criminal investigations: messages, photos, videos,

A-1602-24

communications, call logs, passwords, emails, contacts, calendars, browser history, notes, geographical data, etc. Devices can also contain deleted information that may be recoverable.

Jados sought permission to conduct physical and forensic analyses of all storage media, explaining the necessity to preserve both processed reports and "raw" data for proceedings against defendant. He wanted to use any forensic tools necessary for acquisition and processing; search all extracted data as reasonably needed to locate relevant evidence; preserve and securely store all extracted raw data; seek assistance from other qualified law enforcement or civilian forensic examiners as needed; and continue examinations as long as necessary to complete them.

## B.

On February 16, 2024, a search warrant judge granted the State's request to search defendant's cell phone based on Officer Scherbinski and Detective Jados' affidavits. The order stated:

> There has been and now is located [in defendant's cell phone] and data:
>
> (a) obtained in violation of the penal laws of the State of New Jersey;
>
> (b) possessed, controlled, designed, intended for use in violation of the penal laws of the State of New Jersey;

8

(c) which has been used in connection with the violation of the penal laws of the State of New Jersey;

(d) which constitutes evidence of or tends to show a violation of the penal laws of the State of New Jersey, to wit:

> Data and information stored on or within the above-described electronic device, including any removable flash media, relevant to the investigation of the crime(s) of Murder[2] and Aggravated Manslaughter, including items of investigative and/or evidential value which may be found, from the time period of January 1, 2020 through, to, and including January 13, 2024, to include:
>
> 1) Information regarding passwords or enabling encryption of the device(s);
>
> 2) Information pertaining to the identity of the subscriber, owner, or user of the device(s);
>
> 3) Stored contact information providing corroborative evidence and communication with involved persons, or tending to establish an association with others who are likely involved in the investigated crime(s), including address books, directories, calendars, etc.;
>
> 4) Incoming, outgoing, and missed telephone calls, call detail records, and/or

---

[2] This is erroneous as defendant was not charged with murder.

text messages relating to the investigated crime(s);

5) Internet history, favorites, profiles, caches, cookies, metadata and stored pages relating to the investigated crime(s);

6) E-mails, read and/or maintained on the device(s), that bear upon any of the investigated crime(s);

7) Stored electronic information, including graphic files (both video and photo) on said devices, that bear upon the investigated crime(s);

8) Location data, whether recorded by the Global Positioning System (GPS), Bluetooth, WiFi, or other wireless antenna system(s), of the device(s) relevant to the investigated crime(s);

9) Applications capable of transmitting multimedia (files, photos, videos, audio, etc.) electronic messages, including SMS, MMS, itext, or social media applications, inclusive of the messages, whether opened or unopened, deleted, read or unread, relevant to the investigated crime(s) (i.e. Facebook, Twitter, Instagram, KIK, Snapchat, Telegram, Whisper, Skout, et al.), via Personal Communications Service; Telephone/Voice Over Internet Protocol (including Mobile Broadband Networks and Wifi); Global Standard for Mobile; Code Division Multiple Access; or other wireless messaging applications or software programs; however, said

10

applications may only access information and data resident on said device(s) and may not be used to access the Internet or to upload or download additional information and data;

10) Data stored on user downloaded applications related to the investigated crime(s) and/or regarding related incidents described prior, including any password-protected, deleted or encrypted data or information;

11) Databases, and information, electronic or otherwise, stored on or within the above referenced electronic device(s), including any removable flash media, relevant to the investigated crime(s), including items of evidential value which may be found;

12) Stored electronic information, or otherwise stored information (registry keys, plists, databases, event logs, etc.), within the above references device(s), necessary to acquire, process, decrypt, and/or interpret the above-specified items; and

13) Data, databases, metadata, and/or information, with respect to the above-specified items, that may be located in deleted, unallocated, or slack spaces within the electronic device(s).

A-1602-24

Thus, the State was authorized to conduct a forensic examination of defendant's cell phone from January 1, 2020 through January 13, 2024, covering a wide range of data types.

Initially, the State moved to compel defendant to provide the password to her locked cell phone, but this motion was withdrawn after the State gained access to the phone's contents without the password. Detective Jados conducted a full forensic extraction of the phone using software enabling the recovery of extensive data, including location history, texts, and information relevant to the search warrant.

C.

On April 12, 2024, a Monmouth County Grand Jury indicted defendant on first-degree aggravated manslaughter, two counts of second-degree aggravated assault, and two counts of fourth-degree assault by auto. Three months later, defendant moved to suppress evidence extracted from the cell phone.[3]

After argument on October 15, the motion court reserved decision.[4] Eight days later, the court issued an oral decision. Citing State v. Sullivan, 169 N.J.

---

[3] The day after defendant filed her motion, the State filed a motion in limine to admit N.J.R.E. 404(b) evidence. The denial of that motion is not before us.

[4] The argument transcript is not in the record before us.

204, 210 (2001), the court determined a search warrant is presumed valid unless the party opposing its issuance establishes there was no "probable cause to believe that evidence of a crime is at the place to be searched." The court found defendant did not satisfy her burden under State v. Marshall, 123 N.J. 1, 72 (1991), to show the warrant was invalid. The court held, based on the affidavits of Officer Scherbinski and Detective Jados, the "[e]vidence found on defendant's phone related to defendant's drug usage going directly to [] aggravated manslaughter" and "probable cause exists to support the idea that defendant's history of drug use was facilitated by the use of defendant's cell phone." The court stated the search warrant allowed the search of defendant's phone for information "within the period of January 1st, 2022 and January 13th, 2024." However, the actual time frame in the search warrant was January 1, 2020 through January 13, 2024.

II.

In her appeal, defendant argues in a single point: "THE SEARCH WARRANT IS CONSTITUTIONALLY INVALID." To resolve this argument, we are guided by some general principles.

Both the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution "protect individuals' rights 'to be

secure in their persons, houses, papers, and effects' by requiring that search warrants be 'supported by oath or affirmation' and describe with particularity the places subject to search." State v. Andrews, 243 N.J. 447, 464 (2020). "[N]o warrant shall issue except upon probable cause." N.J. Const. art. I, ¶ 7.

"The application for a warrant must satisfy the issuing authority 'that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched.'" State v. Boone, 232 N.J. 417, 426 (2017) (emphasis added) (quoting State v. Jones, 179 N.J. 377, 388 (2004)). The same standard applies to a search warrant to obtain information from a cell phone. Andrews, 243 N.J. at 465-66. Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." State v. Chippero, 201 N.J. 14, 27 (2009) (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)). There must be "substantial evidence" supporting a court's probable cause determination. Id. at 28. The probable cause inquiry requires courts to "make a practical, common sense determination whether, given all of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Marshall, 199 N.J. at 610 (quoting State v.

14

O'Neal, 190 N.J. 601, 612 (2007)). "[A] search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden 'to prove that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" Jones, 179 N.J. at 388 (quoting State v. Valencia, 93 N.J. 126, 133 (1983)); see also Boone, 232 N.J. at 427. A search warrant affidavit containing hearsay is acceptable to support a search warrant as long as it "contain[s] 'facts which give the statement an appearance of trustworthiness.'" State v. Gathers, 234 N.J. 208, 223 (2018) (quoting State v. DiRienzo, 53 N.J. 360, 385 (1969)).

We "should reverse [an order authorizing a search warrant] only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)) (internal quotation marks omitted). The trial court's "factual findings underlying [its] decision [are upheld] so long as those findings are supported by sufficient credible evidence in the record." State v. Lamb, 218 N.J. 300, 313 (2014). "A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference. Therefore, a trial court's legal conclusions are reviewed de novo." Gamble, 218 N.J. at 425

(citation omitted). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting Jones, 179 N.J. at 389).

III.

Defendant challenges the motion court's ruling that probable cause existed to issue the search warrant of her cell phone because it contained evidence related to her indictment for aggravated manslaughter. Thus, our review of the ruling is de novo. See Gamble, 218 N.J. at 425.

To convict defendant of aggravated manslaughter, the State had to prove she "recklessly cause[d] death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4(a)(1). Aggravation occurs when defendant's conduct "manifesting extreme indifference to human life elevates the risk level from a mere possibility to a probability." State v. Curtis, 195 N.J. Super. 354, 364 (1984) (internal quotation omitted). The State contends "Scherbinski's affidavit established probable cause to believe evidence relevant to establishing an element of [aggravated manslaughter] — the recklessness and indifference to human life occasioned by her impaired driving, . . . — could be found in locations [in defendant's cell phone] beyond the call logs for the date and time of the collision."

16

A decade ago, the United State Supreme Court recognized the need to protect people from Fourth Amendment violations that arise when the government accesses information in a person's cell phone. In Riley v. California, the Court held "[m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life." 573 U.S. 373, 403 (2014) (citation and internal quotation marks omitted). See also Carpenter v. United States, 585 U.S. 296, 320, (2018) (noting the judiciary is obligated "to ensure that [technological progress] does not erode Fourth Amendment protections"). And given the immeasurably expanded use of cell phones since Riley, this court recently acknowledged our State constitution's recognition of "the strong privacy interests associated with the contents[] of individuals' personal electronic devices, which often include an extraordinary amount of confidential and even privileged information." Lipsky v. N.J. Ass'n of Health Plans, Inc., 474 N.J. Super. 447, 473, 475 (App. Div. 2023) (reversing a discovery "order to the extent the trial court mandated that the [New Jersey] Department [of Health] and its employees turn over State-issued and personal electronic devices for forensic review by plaintiffs' [information technology] expert").

17

Viewing the totality of the circumstances, we agree with defendant and amicus that the search warrant was not based upon probable cause that her cell phone contained evidence related to the charged crimes, thereby making the warrant constitutionally invalid. We conclude there is nothing within the four corners of Officer Scherbinski's affidavit, or a reasonable interpretation of the facts or hearsay he asserts, to establish a connection between the cell phone and the proofs needed to sustain an aggravated manslaughter charge. We appreciate the officer's assertion that defendant probably used her phone to acquire illegal drugs. But in an effort to establish defendant's driving at the time of the fatal accident was reckless and demonstrated indifference to human life, Scherbinski's his affidavit relied upon an unnamed toxicologist's vague claim that to determine whether a person is impaired by substances: "[I]t is useful to learn the extent of the person's history with narcotic substances, including what narcotics were used, in what amounts, in what combinations, for how long, and how often." The toxicologist's purported statement makes no reference to what defendant's post-accident blood tests revealed nor does it specify how long a history of her substance abuse is needed. The mere claim that the cell phone may contain "useful" information is an unreasonable basis under our federal or state constitutions to search defendant's cell phone containing her most private

thoughts and communications to determine whether she was impaired at the time of the accident based on potential cell phone data showing the extent of her illegal substance consumption. One might reasonably expect the phone to reveal defendant's drug purchases, but to expect the phone to indicate how much or what drugs defendant may have consumed over a period of time is certainly doubtful at best.

Defendant has a documented history of substance abuse disorder. To the extent her drug use other than the day or so before the accident may be relevant, this information is accessible and more reliably obtained through other means outside of her cell phone, which contains personal privileged information unrelated to the indictment. Indeed, defendant acknowledged at argument before us that the State has obtained her substance abuse disorder treatment records.

We also find it constitutionally problematic that the warrant allows for a search of defendant's cell phone information covering a four-year period, January 1, 2020 through January 13, 2024. There is no reasonable indication in the State's affidavits why the search covered this length of time. At argument, the State conceded that the January 1, 2020 date goes back to defendant's first arrest for possession of CDS. As noted, given the toxicologist's vague statement

19

regarding the importance of drug use history, we conclude a four-year lookback for the search of defendant's cell phone is overbroad.

The search warrant is further overbroad for the scope of information or data sought in defendant's cell phone. Considering the State claims it was specifically looking for evidence showing the extent of defendant's drug use, the warrant's authorization for information or data related to a violation of any of our state's criminal laws is constitutionally invalid. See, e.g., United States v. Winn, 79 F.Supp. 3d 904, 918, 927 (S.D. Ill. 2015) (finding a communications data warrant "ha[d] no valid portions" because the description of the search— "any and all files"—was broader than the evidence over which the police had probable cause). The warrant was not limited to information or data related to the use of illegal drugs that would assist the State's investigation regarding the charge of aggravated manslaughter.

To the extent we conclude that Officer Scherbinski's affidavit does not establish probable cause to justify the search of defendant's cell phone, defendant and amicus' reliance on our recent decision in State v. Missak, 476 N.J. Super. 302 (App. Div. 2023), is appropriate. In Missak, we addressed the proper scope of a search warrant for the contents of the defendant's cell phone taken from him incident to his arrest for attempted sexual assault. Id. at 307.

20

The trial court granted a search warrant which sought "all of the data" on defendant's smart phone, including stored electronic data, all recent calls and messages, stored pictures and videos, GPS data, calendar information, encrypted files, and any other stored information helpful to the investigation. Id. at 310-11. The trial court found there was probable cause to search the entire contents of the phone. Id. at 311. We, however, ruled the warrant was overbroad, because "the warrant's constitutional infirmity [was] grounded in its authorization of searches of information and data within the phone for which [the affiant]'s certification d[id] not adequately establish probable cause." Id. at 322. Taking into consideration "the complexity" of cell phones and "law enforcement's ability to cull through the information and data," the court instructed that "any future search warrant application should address such issues to allow the court to determine the locations within the data and information on the cellular phone there is probable cause to believe relevant information concerning the crimes charged may be found." Id. at 323.

Defendant and amicus also argue the search warrant application was deficient because Scherbinski's affidavit failed to particularize the locations in the cell phone where information or data can be found. However, as was the situation in Missak, it is unnecessary "to reach the argument because the fatal

A-1602-24

flaw in the warrant is not that it does not define with particularity where the search may be conducted." Id. at 322.

## IV.

In sum, we conclude the search warrant violates our federal and state constitutional protections against unreasonable searches and seizures. The State's warrant application did not provide probable cause to search defendant's cell phone for information or data to support the charge of aggravated manslaughter—that defendant was reckless and indifferent to human life by her impaired driving—and is overbroad by covering a four-year search span and violations of any state criminal law.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hadley

Clerk of the Appellate Division

A-1602-24